# CHARLESTOWN.

## HENRY D. RUST v. MARY E. VANVACTER.

### October 31, 1866.

1876.
August Term.

1. A writ of *habeas corpus ad subjiciendum* to obtain possesson of an infant by its father under the first section of the sixtieth chapter of the acts of the Legislature of 1872–3. is proper. Such writ may be ordered, issued and return made thereon, and the case decided by a judge of the circuit court in vacation. The petition for such writ, may be in the name of the father.

2. The proper office of the said writ is to release from illegal restraint; and when the party is of years of discretion and *sui juris*, nothing more is done than to discharge him. But if he be not of an age to determine for himself, the court or judge must decide for him, and make an order for his being placed in the proper custody; and to enable the court or judge to do so, it must determine to whom the right of the custody belongs.

3. When the infant is between eight and nine years of age, it is not necessary to allege in express terms she is detained against her will. It is sufficient if it appears upon the face of the petition that the petitioner has a legal right to the custody of the infant and the detention of the child from the father in violation of that right.

4 It is not regular or proper to demur to the petition, but the proper course, ordinarily, is to produce the child, make return, and then move to quash the writ. issued upon insufficient cause. The petition, however, is not always to be looked to exclusively to ascertain if the infant is detained without lawful authority, for the language of the law is, "who shall apply for the same by petition, showing by affidavit or other evidence probable cause to believe that he is detained without lawful authority."

5. The refusal of the judge to require of the petitioner, bond with se-

curity for costs in this case, is not error for which an Appellate Court will reverse the order and judgment of the court as to the proper custody, &c., of the infant.

6. The father is the natural guardian of his infant children, and in the absence of good and sufficient cause shown to the judge or court, such as ill usage, grossly immoral principles or habits, want of ability, &c., is entitled to their custody, care and education.

7. Whatever may be the rule at common law upon the subject, with us, the return of the person to whom the writ is directed is not conclusive, for the language of our statute is, that the court or judge, after hearing the matter both upon the return and any other evidence, shall, &c. The return may therefore be contradicted or disproved, in whole, or part, by other evidence.

8. A case in which a judge of a circuit court in vacation, upon a writ of *habeas corpus*, ordered an infant child between eight and nine years old to be delivered to the custody of her father, by her grandmother, and the Appellate Court affirmed the order and judgment. See opinion of the Court.

*Supersedeas* to an order of the judge of the circuit court of Jefferson county, entered on the nineteenth day of November, 1874, in a *habeas corpus* case before him therein pending, in which Henry D. Rust was plaintiff, and Mary E. Vanvacter was defendant.

The facts are set forth in the opinion of the Court.

Hon. John Blair Hoge, Judge of said circuit court, presided at the hearing below.

*D. B. Lucas* for said Mary E. Vanvacter, plaintiff in error.

*W. L. Wilson* and *W. H. Travers* for said Rust, defendant in error.

HAYMOND, PRESIDENT:

This is a case of *habeas corpus ad subjiciendum*. The writ of *habeas corpus* was ordered to be issued by the Judge of the circuit court of Jefferson county in vacation, and was issued, and made returnable before the Judge of said court, at the courthouse thereof, on the twenty-fourth day of September, 1874, at 11 o'clock, A. M. The writ was ordered to issue, by the judge, on

76

the nineteenth day of September, and it issued on the twenty-first day of said month of September. The said writ was issued upon the petition of Henry D. Rust. The petition presented by said Rust to the Judge for the writ, alleges that, " he is the father, by a former wife, of an infant child, Anna Elizabeth Rust, now between eight and nine years of age; that its mother, Anna Maria Rust, who was the daughter of Mrs. Mary E. Vanvacter, died on the twenty-ninth day of August, 1866, when the said infant was about five months old; that the said infant, immediately after the death of its mother, passed into the custody of its said grandmother, where it has been ever since the loss of its said mother, and where its wants have been suitably supplied by your petitioner; that, from time to time, and especially since the twentieth day of October, 1872, when your petitioner married again, he has repeatedly demanded that his child. should be surrendered to him by its said grandmother, that he might bestow upon it such care and attention as are due to it, and which he is abundantly able to give to it, and that himself and wife, both of whom are childless, might be afforded that comfort which is to be derived from the possession of an only child; but your petitioner avers that, notwithstanding these repeated demands, the said Mary E. Vanvacter has persistently refused to surrender his said daughter to the custody of your petitioner. Wherefore, and since your petitioner is remediless, save in a court having proper cognizance of the matter, he humbly prays that the writ of *habeas corpus ad subjiciendum* may be granted, directed to the said Mary E. Vanvacter, to produce the body of said Anna Elizabeth Rust before your Honor, at such time as may be designated in the said writ, that said Mary E. Vanvacter may show cause, if any she have, why the said infant is detained by her, and not delivered as, of right, it should be, to your petitioner; that the said infant be taken from the custody of the said Mary E. Vanvacter, and delivered to the custody and control of your petitioner, and that

such other and further relief as the nature of the case, and as may seem meet to equity and justice, be afforded. The petition is verified by the affidavit of the petitioner.

On the return day of the writ, Mary E. Vanvacter made this return to the writ, viz: " In the matter of the petition of Henry Rust, and the writ of *habeas corpus ad subjiciendum* which issued from the circuit court clerk's office of Jefferson county, on the twenty-first day of September, 1874, returnable on the twenty-fourth day of September, 1874, and which was served on respondent on the twenty-third day of September, 1874, this respondent demurs to said petition, and denies the authority of the Judge of said court to order the said writ to be returned before him, to be tried in vacation, and without bringing the body of the said child, in obedience to said writ, but protesting against all contempt, or disrespect, to said Judge, or court, prays that she be not compelled to answer further, but asked to be hence dismissed with costs. This return is also verified by the affidavit of the respondent.

It appears that the judge sustained an exception, by the petitioner, to the "conclusiveness of this answer and return to further inquiry, and ordered the respondent to produce the body of the child and answer over." To which ruling, the respondent excepted. It further appears that the respondent then made another or amended answer, in these words, viz: "Producing the body of Anna Elizabeth Rust, this respondent, Mrs. Mary E. Vanvacter, in obedience to the writ of *habeas corpus ad subjiciendum,* and for further answer to the same, says that it is true, as stated in the petition, that the petitioner Henry D. Rust, is the father of the infant, Anna Elizabeth Rust, by a former wife, Anna Maria Rust, the daughter of this respondent, and that the infant's age and the date of its mother's death are correctly stated in the petition. The respondent says that her said daughter, on her death-bed, in the presence, and with the full consent and approbation of the petitioner, committed said child to the custody and

charge of this respondent for nurture, maintenance and education, until she should reach her majority, and that immediately after the mother's death, when said child was of the tender age of five months, she was brought by her father, the petitioner, in accordance with said understanding, to the house of respondent, who has since kept and maintained and most tenderly cared for her; that when so brought, the child was almost in the arms of death, and that nothing but the motherly and constant nursing of this respondent saved her life; that the child from that day to this, has been entirely maintained, clothed and cared for by this respondent, her father contributing nothing to any of these objects, except at long intervals to make her an occasional present of some article of dress; that the child has never known any mother than respondent, and acts and feels towards, and regards her as her mother, calling her "ma," and loving her with all the deep affection of a sensitive and amiable nature; that the child is now sick, and, as respondent believes, has the whooping cough, and this respondent believes that the blow of a separation at this time would injure her health, and most probably endanger her life; and she is bitterly averse to separating from her "ma," and the very suggestion and threat by the institution of this proceeding have, by her constant weeping and depression, increased her indisposition; that this respondent is abundantly able to maintain and educate said infant, whom she cherishes with the most tender affection, and is willing to bind herself, and hereby solemnly contracts and promises, to give her a childs portion of her estate, real and personal, (she owning and occupying a valuable farm in this county, with most valuable water power attached,) at her death, and, during her life, to afford her the best education which the most refined schools of this county can furnish. Respondent avers that petitioner is not in pecuniary circumstances to give the child such advantages of education as she herself can, and will confer, and that it

cannot be expected that a step-mother under the circumstances, will so well provide for the wants, nursing and necessities of this child, as respondent has done, and is now doing, and will continue to do."

By bill of exceptions second, it appears, that on the trial of the case, and after the body of the child had been produced, the respondent moved the Judge to order the petitioner to execute bond, with surety, in a reasonable penalty, payable to the respondent, and conditioned to pay all such costs and charges as might be awarded against him. But the Judge refused to grant the order. To which opinion and ruling the respondent also excepted.

It also appears by bill of exceptions third, that, on the trial of the case, the respondent moved the Judge to exclude all the evidence offered by the petitioner which tended to contradict the respondent's answer and return. But the judge, being of opinion that the answer and return were not conclusive, overruled the respondent's motion, and admitted and considered evidence tending to contradict the answer and return, to which ruling and action of the Judge, the respondent also excepted.

On the nineteenth day of November, 1874, the Judge rendered his decision in the case, and he adjudged and ordered, that the petitioner, Henry D. Rust, "do have the custody of the person of the said infant, Anna Elizabeth Rust, and that she be delivered by the respondent, Mary E. Vanvacter, to said Henry D. Rust; that the sheriff, if necessary, is directed to execute this order, and that the said Henry D. Rust, recover of respondent, Mary E. Vanvacter, his costs by him in this behalf expended." This order and judgment was certified to the clerk of the circuit court of Jefferson county, to be entered of record, in vacation, in the proper order book of said court. The respondent took a fourth bill of exceptions to the judgment of the court rendered in the case, by which it appears that the petitioner, to sustain his petition, proved that in 1861, he married Anna Maria

Vanvacter, the daughter of Mary E. Vanvacter, the respondent; that the child of that marriage, the subject of this controversy, was born March 28, 1866, and was the only issue. The mother died in August, 1866, five months after the birth of the child. Some time before her death, during her last illness, the sick wife told her husband she did not desire her mother to take their child in the event of her death. The petitioner is an industrious, sober and enterprising mechanic, a house-joiner and builder, is thirty-eight years of age, is in comfortable circumstances, owning a house and lot in Charlestown. In 1872, he married a second wife, and has since gone to housekeeping. His second wife is an estimable lady, thirty-three years of age, and they have no children. His family consists of himself, wife, mother-in-law, and part of the time his sister-in-law. Petitioner on these occasions paid doctor bills for the child, and has contributed to her clothing. He has visited her regularly and frequently,. And to sustain her return, the respondent proved that, during her last illness, and the day before her death, the mother of the child told respondent that she desired her to take her child, and do a mother's part by it, and keep it as long as she, respondent, should live; a few days after her mother's death, the petitioner carried the infant to respondent's house, and placed it in her charge. The child was then very delicate, and required, and has required, assiduous care and loving attention at the hands of the respondent. She has known no mother, and calls respondent "mother," and desires to remain with her in preference to going to live with her father, and is very much distressed and depressed at the prospect of a separation. She is a smart and industrious child; the mother died of consumption, and the child has indications of scrofulous tendency. The mother was well educated, and, in every respect, an exemplary lady. The respondent has eight children, but has no one living with her at present, but her son Thomas, and her grand daughter, the

subject of this controversy. She owns a small farm on the Shenandoah river, four miles from Charlestown, and has personal property, assessed at $900. She was born in 1815; has always expected to retain the child during her own life, and to give it a child's portion at her death." And further, to sustain her return, the respondent gave in evidence the affidavit of *Susan* Myers, which is as follows, to-wit: On the morning upon which Annie Rust, the wife of Henry D. Rust, died, she said that it was her wish that Mrs. Mary E. Vanvacter should have the child. Mr. Rust also said that he wanted Mrs. Vanvacter to have the child; that she was the one to have it; that he knew that she would raise it right, and do a good part by it; that he had too much to do to attend to the child, and that he knew it would be neglected. I have frequently heard him say that if my mother, Mrs. Mary E. Vanvacter, had not taken charge of the child, it would have been in its grave, because it would have been neglected, as he had his business to attend to, and no one would have done by it as mother did. He also said to me, at the same time, that he did not want to do anything against his wife's wishes." This affidavit appears to have been made on the thirty-first day of October, 1874, in Charlestown. To this affidavit, there is this note appended by the officer before whom the same was made, viz: "The counsel for the plaintiff being present, and proposing to cross-examine, the counsel for the defendant excepted, and the cross-examination was not made, but neither the witness nor the commissioner interposed any objection to the cross-examination."

And these were all the facts proved in the case. And thereupon, at another day, in chambers, the petitioner moved his Honor, the Judge, to order the custody of the child to be delivered to him, which motion, the Judge granted, " and directed the order hereinbefore referred to, to be made." To which order of the judge respondent excepted in due form. To the order, and judgment

1876.
August Term.

Rust
v.
Vanvacter.

1876.
August Term.

Rust
v.
Vanvacter.

of said judge, so made in this case, the respondent obtained a *supersedeas* from this Court upon petition and assignment of error. It is now to be determined whether there is such error in the order and judgment of said judge, as to require this Court to reverse and annull the same.

This case presents circumstances and facts of great interest as well as delicacy, "involving legal rights and the dearest feelings of the parties." On the one hand, is the legal right of the only parent and his parental interest and feelings, and on the other, the feelings and rights, such as these rights may be, of the grandmother. And again the feelings, and, it may be, future prosperity and condition in life, of the infant child. In any event, the decision of the case must cause pain and perhaps disappointment. This Court, however, must perform its duty, and administer and pronounce the law of the case according to the facts. This duty, this Court will perform according to its understanding.

*The first error assigned*, is substantially, that the *habeas corpus* act in force in this State, is not intended to confer jurisdiction upon a judge in vacation, to relieve from *private* restraint, but is only applicable to cases of *public* restraint.

Chapter one hundred and eleven of the Code of this State, has been amended and re-enacted. See chapter fifty, page one hundred and forty-nine of the Acts of 1872 and 1873. The first section of chapter one hundred and eleven, as amended and re-enacted, declares that "The writ of *habeas corpus ad-subjiciendum* shall be granted forthwith by the Supreme Court of Appeals, or any circuit court, or any judge of either court in vacation, or county court of any county in the State, to any person who shall apply for the same by petition, showing by affidavit, or other evidence, probable cause to believe that he is detained without lawful authority." This section, as re-enacted, is the same as contained in the Code

in Chapter one hundred and eleven, except the authority given to the county court. The writ of *habeas corpus* under our statute, is not limited to cases of detainer for criminal or supposed criminal matters, but applies to all illegal confinement, and, under it, the petition for a writ of *habeas corpus* to obtain possession of an infant child may be in the name of the father claiming possession of the child. *Armstrong v. Stone and wife,* 9 Gratt. R. 102. 399; *Commonwealth v. Hamilton,* 6 Mass., 273; *The People v. Mercein,* 3 Hill (N. Y.,) This is not a contest for the guardianship of the child, and if it were, it seems it could not be determined in this form of proceeding. Id. 105 and 106, Hurd on Habeas Corpus, 457. "The term *imprisonment* usually imports a restraint contrary to the wishes of the prisoner; and the writ of *habeas corpus* was designed as a remedy for *him,* to be invoked at *his* instance, to set him at liberty, not to change his keeper. But in the case of infants, the illegal custody has been treated, at least, for the purpose of allowing the writ to issue as equivalent to imprisonment; and the duty of returning to such custody, as equivalent to a wish to be free." Hurd on Hab. 454. In the case in 9 Grattan, before cited, Judge Allen, in delivering the opinion of the court, at page 106, says, "Whilst it is undoubtedly true, that the proper office of the writ is to release from illegal restraint, and where the party is of years of discretion and *sui juris,* nothing more is done than to discharge him; yet, if he be not of an age to determine for himself, the court or judge must decide for him, and make an order for his being placed in the proper custody. And to enable it to do so, must determine to whom the right to the custody belongs. The custody of the minor will be assigned to the person having the right, unless it appeared he was an improper person to take it. The first error assigned is not well taken and is overruled.

*The second error assigned,* is that the petition is bad on demurrer. The child in this case being so *young,* only between eight and nine years of age, I do not think

77

it was necessary to allege in the petition, in express terms, that she was detained against her will. The petition shows on its face, a legal right to the custody of the child, and the detention of the child from the father in violation of that right. The facts stated in the petition, it seems to me, are sufficient to justify the issuing of the writ. It seems to me that it is not regular or proper to demur to the petition; but that the proper course to pursue, ordinarily, is to produce the child or prisoner; make return, and then move to quash the writ, if it were issued without sufficient cause. But the language employed in our statute is " who shall apply for the same by petition, showing, by *affidavit*, or other *evidence*, probable cause to believe that he is detained without lawful authority." The petition then, is not always to be looked to, exclusively, to ascertain if the child or prisoner is detained without lawful authority. The words of the statute providing so great and efficacious remedy for all illegal confinement, should be construed literally. The second assignment of error is not well taken, and is overruled.

*The third assignment of error* is, that this proceeding is not intended or adapted to the determination of any question involving the existence or continuation of a contract, or the establishment of any collateral right, such as is involved in this case. In *Ruddle's exor. v. Ben*, 10 Leigh. 467, Judge Parker, in delivering the opinion of the court, at page 476, says: " It often happens that a judge is forced to decide the most embarrassing and delicate questions on the return of that writ. The writ itself applies to all cases of illegal detention of the person, except that which grows out of the relation of master and slave; and it would apply to that also, but another remedy is provided which seems entirely to preclude a resort to the *habeas corpus*." " The power of a judge, or other officer, in vacation, in respect to the custody of infants, when the jurisdiction under the writ is conferred in general terms, and without particular qualifications, is

the same as that of a court of general jurisdiction in term, when acting under the writ alone. The powers of a judge, or court of law, are the same as that of a court of equity under the writ. It has, sometimes, been supposed that a chancellor, or a court of equity, possessed ampler powers, under the writ of *habeas corpus*, than a judge, or court of law, could exercise. But this is a mistake. The jurisdiction in such cases, and the powers under the writ are 'exactly the same.' Crawley's case, 2 Swanst. Rep. 79 ; *Lyons v. Blenheim*, Jac. 245, n.; Matter of Wollstencraft, 4 John. C. R. 80, Hurd, 456, 457." The grounds upon which courts of equity proceed in questions of parental custody are more numerous, and sometimes of a different character from those upon which orders in *habeas corpus* are founded. Hurd, 457. "The jurisdiction of the court, or judge, to determine who has the right to the custody of the minor upon a *habeas corpus*, has been uniformly affirmed. *King v. Delavel*, 3 Burn. R. 1434; *King v. Greenhill*, 3 Eng. C. L. R. 153 ;" 9 Gratt. 106, 107.

I don't think there is any contract, or fact, disclosed in this case to prevent the judge from deciding and disposing of the custody of the child. *People v. Mercein*, 3 Hill, 309; *State* (Herrick relator) *v. Richardson*, 40 New Hampshire, 272; *The State ex relatione John Mayne v. Henry Baldwin*, 5 New Jersey, Eq. R. 454, 455. The third error is not well assigned, and is overruled.

*The fourth error assigned* is, that the judge erred on the merits, and also in not requiring the bond asked for.

*The fifth error assigned* is, that the child, on the day of the order remanding her to the custody of the father, lacked but four months and ten days of being nine years old, and the judge should have relieved the child of restraint, if any existed, and should not have ordered her into the custody of her father against her will.

*The sixth*, that the welfare of the child should have been the paramount consideration, and, in this case, she should not have been subjected to depressing influences.

*The seventh error assigned* is, that "The petition of Rust was not simply to enforce his legal right of custody, but for equitable relief. The judge should, therefore, have remitted him to a court which could administer equity. These four last named assignments of error I will consider together.

I think there is doubt whether the third section of the act of 1873, as to the bond, was intended to apply to a case such as this, but that, if it does, it is a matter intended to be left in the discretion of the court, or judge, as to whether the bond should be required, or not, and may not be demanded by the person to whom the writ is directed, as a legal right. At all events, the refusing to require the bond asked, is not sufficient to authorize this Court to reverse the order and judgment of the judge in this case. The father is the natural guardian of his infant children, and in the absence of good and sufficient reasons shown to the judge, or court, such as ill usage, grossly immoral principles or habits, want of ability, &c., is entitled to their custody, care and education. It seems that all the authorities concur on this point. 9 Gratt, 106, 107, 108; 3 Hill (N. Y.) 399; 40 New Hampshire. 272; 1 Strange, 579; 2 Ld. Raymond, 1334; 3 Burr. 1436; 5 East. 221; 9 J. B. Moore, 278; 10 Vesey, 51; 12 Id. 492; 2 Russel, 1 Jacob, 245; and notes to the case; 4 Cond. Ch. 115; 2 Simon, 35; 2 Cond. Ch. 299; 8 Johns R. 328; 2 Kent's Comm. 220 and 194; 1 Dow. N. S. 152; 2 Fenbl. 232 (n.); 2 Bro. C. C. 101; Blesset's case, Lofft. 74; 8 *Ex parte* McClellan, 1 Dow. P. C. 81; 2 Cox, 242; *Commonwealth v. Briggs,* 16 Pick. 205; *The people ex rel. J. Nickerson v. ———,* 19 Wendell's R. 14.

The custody of the minor will be assigned to the person having the right, unless it appears he is an improper person to take it. And when such person has not the custody, and is seeking to be restored to it, the court will exercise its discretion according to the facts, consulting the wishes of the minor, if of years of discretion; if not, exercising its own judgment as to what will be

best calculated to promote the interests of the child, having due regard to the legal rights of the party claiming the custody. 9 Gratt. 106, 107; R. 4 Ad. and El. 624. The child, in this case, is not nine years old, or rather was not, when the Judge made the order in question. In the case *In re* Preston, 5 Dewl. and L. 247, Patterson J., said: "In deciding this question, it seems to me it is altogether useless to question the child, as to with whom he might wish to be. It is difficult to say at what age a child is capable of exercising a sound discretion, and judging for itself in matters of this kind; but it seems to me that it is but a mockery to ask a child of nine years of age whether he would sooner remain with the person who has brought him up, or go with a stranger." In *Rex v. Johnson,* 1 Stra., 579, the infant was nine years old, the court said: "This being the case of a young child, who had no judgment of her own, they ought to deliver her to her guardian." In the case of State (Herrick relator) *v. Richardson,* 40 New Hampshire, 272, it was held that the action of the court should not be controlled by the wishes of a child ten years of age. In this State, infants are not permitted to choose their guardians until they are fourteen years old. The law in this respect must be founded upon the presumption that infants, prior to that age, are incompetent to make a proper or judicious selection. It does not appear that the child, in this case, has ever been sent to school, or received any education, and it seems to me that considering her tender years, and all the circumstances, she is too young to decide for herself into whose custody she should go, or be placed, and that it is the duty of the court to determine to whom the custody belongs. The seventh section of chapter 149, of the acts of the Legislature of 1872 and 1873, provides that, "Every guardian who shall be appointed as aforesaid, and give bond when it is required, shall have the custody of his ward, and the possession, care and management of his estate, real and personal, and out of the proceeds of such estate, shall

provide for his maintenance and education; but the father of the minor, if living, and in case of his death, the mother, if fit for the trust, shall be entitled to the custody of the person of the minor, and to the care of his education." Whatever may be the rule at common law upon the subject, with us, the return of the person to whom the writ is directed, is not conclusive, for the language of the law is, "that the court or Judge, after hearing the matter, both upon the return and any other evidence, shall," &c. 6 section of chap. 60, p. 150, acts of 1872 and 1873. The return, therefore, may be contradicted, in whole or part, by other evidence in this proceeding.

In the case of *The State, ex-relatione John Mayne v. Henry Baldwin*, 5 New Jersey, Equity R., by Halstead, page 454, it was decided that an infant daughter should be delivered, to her father, though he had verbally committed her to the care and custody of the respondent until she should attain the age of twenty-one years, and the respondent had adopted her accordingly. See also, 40 New Hampshire, 279, and cases there cited, touching the same subject, and also *In re Boreman*, 16 Eng. Law and Equity, 221, also, *Johnson v. Terry*, 34, Conn. R., 259. There seems to be other cases holding otherwise. Hurd, 528, 529, 537, 539, 540. I do not, however, now definitely determine that question, as I deem it unnecessary in this case. I do not think the evidence in this case shows that the petitioner has waived, or abandoned, or intended to waive, or abandon, his parental rights, by permitting his child to remain with its grandmother so long, or that he ever transferred, or intended to pass his parental rights to his child, to respondent, so as to deprive him of his legal right to retain it. The evidence is, to some extent, contradictory, and as witnesses were personally before the judge, more consideration must be given to his judgment so far as the credibility of witnesses, who testified before him, are concerned, than if the case had been decided altogether upon the return

and affidavits, or depositions, for obvious reasons. I don't think the objection to the conclusion of the petition is tenable. In so far as it is inapplicable to the petition for the writ, it might be properly regarded as surplusage. I am unable to see what relief a court of equity could give upon the facts stated in the petition and the prayer. See upon this subject, Hurd 458, 459, 460, 461. I see no objection to the judge ordering such relief upon the petition as is authorized by the law in such case; and, of course, any relief prayed for, which the court or judge is not authorized to grant, would be disregarded. But some courts and judges have determined such cases upon equitable principles, to some extent, and granted relief by changing the custody of the child with terms deemed equitable and just. In the case of the *Commonwealth v. Biggs*, 16 Pickering, 203, Chief Justice Shaw, says, at page 205, "And the court will feel bound to restore the custody, where the law has placed it, with the father, unless in a clear and strong case of unfitness on his part to have such custody." Finally, I do not feel authorized, under the circumstances, to decide that the judge has abused the writ in this case.

Upon the principles established in the case in 9 Grattan and 40 New Hampshire, which have been cited and referred to, and other cases similar in important respects, looking to the interest of the child, the legal rights of the parent, and the circumstances of the case in other respects, I do not feel that this Court is authorized to reverse the final order and judgment of the judge made in this case, but the same is affirmed with costs and $30 damages to Henry D. Rust, the defendant in error, against Mary E. Vanvacter, the plaintiff in error.

The other Judges concurred.

JUDGMENT AFFIRMED.