NEVA P. ARNOLD *v.* WILLIAM A. ARNOLD

(No. 7327)

Submitted May 18, 1932.   Decided June 11, 1932.

*S. T. Spears* and *C. O. Strieby*, for appellant.
*Wm. A. Arnold*, for appellee.

MAXELL, JUDGE:

Plaintiff, Neva P. Arnold, instituted suit for divorce in Randolph County. Defendant, William A. Arnold, also sued to obtain a divorce from plaintiff. The suits were consolidated and heard together. Plaintiff was granted a divorce *a mensa et thoro*, on the ground of cruelty. From a decree awarding the custody of the infant son, William A. Arnold, Jr., age 5, to defendant for ten months of each year, and to plaintiff for the months of July and August, plaintiff appeals. She insists she should be awarded full custody of the child. Defendant cross-assigns error. He says that because of plaintiff's cruelty the court should have found that the defendant was the party entitled to a divorce and should have awarded the undivided custody of the child to him.

The parties were married in June, 1926, in Detroit. They have resided in Elkins since. The child was born in April, 1927.

The marriage seems to have been a disappointment to both parties from the beginning. Their temperaments were wholly incompatable. Their marital difficulties increased in seriousness and frequency, and ultimately the parties became irreconcilable. It was the second marriage for each. Both had been divorced. The record is unnecessarily voluminous —about 4000 typewritten pages. We are of opinion that it would serve no useful purpose to enumerate all the criminations and recriminations of this bulky and diffuse record. We shall relate briefly only the accusations, facts and circumstances essential to a decision.

Mrs. Arnold relies upon the following grounds for a divorce: cruelty, adultry, and notoriously licentious conduct of defendant prior to the marriage, unknown to her. She alleges also that he forbade the proprietors of stores and business places to extend her further credit. The charge of adultry was not sustained. The evidence tends strongly to establish that defendant was lewd and licentious before his marriage to plaintiff. He admits that there might be some

basis for the rumor concerning his lasciviousness with one woman. He contends, however, that he had informed plaintiff of the same before the marriage. This the plaintiff denies.

It appears that in November following the marriage defendant began to keep a diary of everything plaintiff did which did not meet with his approval.

> "Check'd like a bondman; all (her) faults observ'd,
> Set in a notebook, learn'd, and conn'd by rote,
> To cast into (her) teeth."

He would take notes of the incidents in shorthand as they occurred, including the dates, and transcribe them at his office. The diary was submitted in evidence and consists of about 160 full pages of closely ·typewritten matter on ordinary typewriting paper, about 700 words per page, total somewhat above 110,000—fully one-fifth more than in the combined first four books of the New Testament. In it defendant pyramids against plaintiff "trifles light as air", and consistently extols his own conduct. He is the martyr. No good word therein for his wife. It is admitted that he told her at one time that some day it would be his pleasure to read the diary in a court proceeding. He admits too that about a year after he began to keep it, he told her he would burn it if she would be the right kind of a wife for one year. Just what were his requirements for the right kind of a wife does not appear.

Defendant avers that plaintiff was naggy and abusive of him; that she was extravagant; that she was a woman of violent and uncontrollable temper; that she had struck him; that because of her religious belief she was opposed to any form of medical treatment, and in that and other respects she was neglectful of the child; that he and plaintiff were incompatible sexually; and that she had persistently sought to injure him in his profession. Neither the commissioner in chancery nor the trial court sustained the defendant in these allegations. Even if they were sustained, they would not necessarily be determinative of her right to a divorce or of her suitability as a proper custodian of the child. In the later months of their living together her abstemiousness of

sex indulgence culminated in complete cessation of coition, enforced by her. She seeks to justify this in his conduct toward her. Probably she was not justified in her extreme attitude, and that sort of unwifelike conduct is well calculated to accentuate marital difficulties, but denial of sexual intercourse alone is not considered legal cruelty. *McKinney* v. *McKinney*, 77 W. Va. 58, 87 S. E. 928. But where the situation is extreme and there is as well a cessation of general marital duty, the offending party is guilty of desertion. *Croll* v. *Croll*, 106 W. Va. 691, 146 S. E. 880.

The trial court has affirmed the commissioner in chancery in finding the defendant guilty of cruelty. The evidence justifies this finding, and we would not be warranted in disturbing it. "In equity the findings of fact of the trial chancellor will not be disturbed on appeal unless at variance with undisputed evidence or contrary to the plain preponderance of the whole evidence." *Kincaid* v. *Evans*, 106 W. Va. 605, 146 S. E. 620; *Robinson* v. *Robinson*, 112 W. Va. ......, 163 S. E. 633.

The finding of cruelty is based not on specific or isolated acts of the defendant but upon a course of conduct well calculated to undermine the plaintiff's peace of mind and to endanger and impair her health. The evidence warranted the commissioner and the trial chancellor in the belief that the defendant in his dealings with his wife exhibited an austerity of temperament of unusual degree, that his sexual demands were excessive, without ruth or lenity, that his general demeanor was such as to make her unhappy and miserable. He questioned her sanity. At the taking of testimony he attempted to have an alienist in attendance to observe her mental reactions under cross-examination. The commissioner, wisely, did not permit this. The defendant, acting as his own attorney, cross-examined the plaintiff to the extent of 500 typewritten legal cap pages.

Observation teaches us that a fixed and constant attitude and course of conduct sapping and undermining the mental and physical organisms of a sensitive and refined woman may be more cruel than intermittent blows. The right of a wife to divorce on the ground of cruelty does not depend upon

traumatism of physical violence. "If the husband's treatment be coarse, unnatural, abusive, so as to render life a misery, prey on the wife's mind, produce mental anguish, impair her nerves and endanger her health, it is enough." *Goff* v. *Goff*, 60 W. Va. 9, 53 S. E. 769.

We come now to the consideration of the custody of the child. Under our statute the father and mother of a minor child have equal rights as to its custody. Code 1923, chapter 82, section 7 (Code 1931, 44-10-7). *Boos* v. *Boos*, 93 W. Va. 727, 117 S. E. 616. The paramount and controlling factor is the welfare of the child. *Odlasek* v. *Odlasek*, 98 W. Va. 357, 127 S. E. 59. In a contest over the custody of a child its welfare is the polar star of guidance. *Reynolds* v. *Reynolds*, 109 W. Va. 513, 155 S. E. 652. It will be remembered that in the case at bar the trial court divided the custody of the child between the mother and father. We are of opinion that as a general rule a division of custody is not conducive to the best interests of the child and ordinarily should be avoided. We are not impressed that the facts and circumstances here justify such division.

The evidence discloses that prior to his marriage to the plaintiff, the defendant was an associate of lewd women. His companions even among men were not always exemplary. One of them (a sort of lieutenant) served a term in jail before he gave evidence herein on behalf of the defendant. The keeping by the defendant of a diary of his wife's alleged misconduct and seeking thereby to coerce her into conducting herself according to his whims and fancies and to build up an anticipated divorce suit against her, marks him as a man of most unusual temperament and habits of thought. Such idiosyncrasy does not distinguish him as a desirable person to assume the responsibility of properly nurturing a small boy and rearing him to manhood under a guidance that would impart to him a fit conception of ordinary proprieties of life.

Defendant's mother, now past seventy years of age, and evidently a worthy woman, is his housekeeper and cares for the child while it is in its father's custody. Experience of life dictates that it is not best for a child at the active and rapidly unfolding age of five that its welfare be so largely

486

committed to one across whose pathway there have fallen the long shadows of the evening.

Though attacking the plaintiff from many angles, the defendant does not question her chastity. She is well educated and has taught school for many years, and according to the evidence stands high in her profession. She is trained in the care and discipline of children. She has quite successfully reared to young womanhood the two daughters of her first marriage. She received $160.00 a month when teaching. This has enabled her to provide and maintain her own home. She says in effect that she will not hesitate to provide medical attention for the child when necessary. If she would not do so, certainly the circuit court would not permit her to continue the custody of the child. When the child was in her custody it physical condition indicated proper care and treatment.

The defendant is an attorney earning about $200.00 a month and owns a comfortable home, subject to mortgage. He contends that he should be awarded the absolute custody of the child because, among other reasons, he is in position to care for it in his own home whereas plaintiff must care for it in rented property. We are of opinion, however, that ''The question is not which of the two claimants can surround the infant with greater luxury, or which of the two will be able to give or bequeath him the greater amount of money or property, but by which of them is he likely to be reared and trained so as to make him the better man and the better citizen.'' *Cover* v. *Widener*, 125 Va. 643, 100 S. E. 459. The ability of the plaintiff properly to care for the child satisfactorily appears. Also, she is the party without legal fault. In the matter of child custody, therefore, the law leans toward her. *Cariens* v. *Cariens*, 50 W. Va. 113, 40 S. E. 335. She seems better qualified morally and temperamentally to perform the trust. In our judgment this responsibility should be reposed in her. We have in mind, however, that there is continuing authority in the circuit court to make such future order as may seem best for the child.

In the decree entered by the distinguished trial chancellor there was a provision requiring the defendant to pay to the plaintiff $25.00 per month for support and maintenance of the child for the two months of each year for which the custody was awarded the plaintiff. Our decree will enlarge that requirement.

There will be a decree here affirming the trial chancellor in finding the defendant guilty of cruelty to the plaintiff. We shall award the undivided custody of the child, William A. Arnold, Jr., to the plaintiff, and require the defendant, until further order of the circuit court of Randolph County, to pay to the plaintiff $25.00 per month for maintenance of the child. The provision of the decree requiring the defendant to pay to the plaintiff the sum of $750.00 in the installments therein specified ''in lieu of the property rights conferred upon Neva P. Arnold by William A. Arnold, by virtue of contract bearing date on the 11th day of November, 1927, * * * and in lieu of alimony pendente lite accruing since October 4th, 1930 * * *,'' is affirmed. We also affirm the portion of the decree which adjudicates costs against the defendant; except $305.15 ''being one-fourth of all the costs incurred by her before the Commissioner in Chancery herein by reason of irrelevant and immaterial matter introduced in the record before the Commissioner * * *.'' The provision which prohibits the removal of the child beyond the state should remain in force until modified by the circuit court.

The cause was heard in this Court on the original record, so there is no printing cost. Costs of the appeal will be awarded the plaintiff (appellant) as the party substantially prevailing.

*Modified and affirmed.*