KATHERINE ST. CLAIR SETTLE *v.* THOMAS HENRY SETTLE

(No. 8384)

Submitted April 7, 1936.   Decided May 19, 1936.

*A. F. Kingdon* and *J. M. B. Lewis, Jr.,* for appellant.
*Richardson & Kemper* and *R. O. Crockett,* for appellee.

MAXWELL, JUDGE:

In this suit of Katherine St. Clair Settle, plaintiff, against her husband, Thomas Henry Settle, defendant, there is involved on the appeal primarily the question of custody of their two children, Roslyn and Thomas, Jr., ages seven and five, respectively. The circuit court awarded custody to the mother with limited and prescribed rights of visitation by the father. He prosecutes this appeal.

The plaintiff sought divorce on the ground of cruelty. In his answer, the defendant categorically denied the charges of cruelty, and prayed for the custody of the children. As basis for his contention that the plaintiff is unfit to have the custody of the children, he charged her with repeated intimate contact with Joseph P. Santori. The defendant did not allege adultery on the part of the wife, though the circumstances pleaded carry the necessary implication of such conduct. Neither did he pray for a divorce: he asked merely for the custody of the children. In a special reply in writing, the plaintiff denied the allegations laid against her by the defendant. The circuit court found specifically (1) that the plaintiff did not establish cruel and inhuman treatment of her by her husband, as she charged in her bill; (2) that the plaintiff is innocent of improper or intimate relations with Joseph P. Santori as charged against her by the defendant in his cross-bill answer. Other specific findings, dealing principally with property matters, are not pertinent to the questions arising on the appeal. Divorce was denied the plaintiff, certain property rights were settled, and the custody of the children was determined as stated.

We concur in the finding of the circuit court that the plaintiff failed to establish her charges against her husband of cruel and inhuman treatment (see further discussion hereinafter) but in the trial court's acquittal of the plaintiff of improper and intimate association with Joseph P. Santori, we do not concur. Her intermittent fellowship with this man through a period of months was inconsistent with circumspection and matronly propriety.

The plaintiff and her children reside with her parents at Tazewell, Virginia. Her father is a man of large wealth, and she has substantial property holdings from which she derives a considerable annual income. The defendant resides at Bluefield, West Virginia, in the home formerly occupied by him and his family. He testified that if he is awarded custody of the children, his sister will make her home with him and care for the children. He owns his home, also other real properties, some of which are income producing. He has an annual net income of about $5,000.00. For a number of years prior to the latter part of 1933, the defendant was associated with plaintiff's father in the coal business, and during that period, the defendant's income was substantially larger than it is at present. In respect of his sobriety and morality, the record affords him affirmative support. However, the evidence tends strongly to establish that in the latter part of defendant's association with plaintiff's father in business, the defendant became neglectful of his duties and devoted much time, energy and capital to stock market speculations, and, further, and more seriously, that there were certain irregularities in his accounts with the partnership of which he was a member. These are relied on by the plaintiff as a reason why the defendant should not be awarded the custody of the children.

On this background, what provision should be made for the children? In reaching a determination of the problem, the court must consider both the welfare of the children and the natural rights of the parents.

Certain settled legal principles are involved. By statute, Code 1931, 48-2-15, as amended by Acts of the Legislature of 1935, chapter 35, section 15, authority ·is placed in the courts to make provision by decree for the custody of children though no divorce be granted the parents, if they are living separate and apart, "and such order or decree may, from time to time afterward, on petition of either of the parties, be revised or altered, and a new order or decree made, as the circumstances of the parties or the needs of the children may require." Another statute provides: "But the father or mother of any minor child or children shall be entitled to the custody of the person of such child or children, and to the care of his or their education. If living together, the father and mother shall be the joint guardians of the person of their minor child or children, with equal powers, rights and duties in respect to the custody, control, services, earnings, and care of the education of such minor child or children; and neither the father nor the mother shall have any right paramount to that of the other in respect to such custody, control, services or earnings, and care of the education of such minor child or children. If the father and mother be living apart, the court to which application is made for the appointment of a guardian, or before which any such matter comes in question, shall appoint, as guardian of the person of the minor child or children of such father and mother, that parent who is, in the court's opinion, best suited for the trust, considering the welfare and best interests of such minor child or children." Code 1931, 44-10-7. This statutory provision is in recognition of the modern and more conscionable conception that there is parity of interest in the parents concerning the welfare of their children; that the natural love and affection of each toward the children should be recognized and not that the mother should be discriminated against in favor of the father as under the old rule. Thus this court spoke in *Cariens* v. *Cariens*, 50 W. Va. 113, 118, 40 S. E. 335, 55 L. R. A. 930: "The boy is but seven

years of age. The law as to the custody of children has been greatly modified. Formerly, the right of the father to its custody was almost an inflexible rule. That rule forgot that a mother had a heart. The real owner of the child, be it even a baby, must give it up. But civilization, advanced thought and human kindness have bent this iron rule and opened the ears of the courts to the pleading of the true friend and owner of the child. The courts do not these days inexorably take from mothers their children of tender years even for the father, if the mother is a fit person, and has a home for them, but look at all the circumstances. The welfare of the child is the test. The welfare of a tender child is with the mother generally."

In unhappy controversies such as at bar, the basic thought contemplates the welfare of the children, the natural rights of the parents not being ignored. "While it is fundamentally true that in legal contests affecting the custody of children, their welfare is the primary consideration of the courts,—the 'polar star' by which the discretion of the courts is to be guided,—*Connor* v. *Harris,* 100 W. Va. 317, *State ex rel. Palmen* v. *Postlethwaite,* 106 W. Va. 383, 145 S. E. 738, it is equally true that the legal rights of the parents will be respected, when such rights have not been transferred or abandoned. *Cunningham* v. *Barnes,* 37 W. Va. 746. In the case of a young child the law favors the mother if she be a fit person. *Beaumont* v. *Beaumont,* 106 W. Va. 622; 146 S. E. 618; *Norman* v. *Norman,* 88 W. Va. 640; *Stapler* v. *Leamons,* 101 W. Va. 235. And again, where a husband and wife are divorced because of the marital misconduct of one of them, the law, as a general rule, favors the innocent spouse in awarding the custody of the children. 2 Bishop, Marriage, Divorce & Separation, sec. 1196; 9 R. C. L. 290." *Rierson* v. *Rierson,* 107 W. Va. 321, 323, 148 S. E. 203.

Each of the parents in suit is in position to provide a good home for the children and to cause them to be surrounded with proper influences, attended with care and

training such as is the natural heritage of young children. We therefore would be unable to say that the light from the "polar star" leads indisputably and unerringly to either the home of the plaintiff and her parents at Tazewell, or the home of the defendant at Bluefield. Consequently, we must look beyond the first rule for a supplementary key which will assist in solving the problem. Nothing else tries a chancellor's soul like questions such as this where human heartstrings are on tension.

These parents have the natural impulses of love and affection and pride centering in their children, and are equally anxious for their welfare and happiness. Has the demeanor of either of them operated as a forfeiture of his or her natural or legal right to the custody of the children, and to be permitted to share in the responsibility and pleasure of their nurture and development? The plaintiff's deportment mentioned has not been prudent, but, all circumstances considered, she should not on that account be totally deprived of the custody of the children. The record points to certain irregularities of the defendant in his business dealings. Such conduct was to his discredit. But he stands acquitted of marital misbehavior which was charged against him.

The plaintiff cross-assigns error to the trial court's acquitting the defendant of cruelty and denying the plaintiff a divorce on that ground. She alleges in her bill that for the first twelve years of their married life, their associations were marked by congeniality and devotion, but that in the latter part of 1930, defendant's attitude toward the plaintiff began to change; that he became indifferent toward her and that he persisted "in practices which were calculated to and the defendant well knew did harass, vex, annoy and profoundly disturb" the plaintiff; that he absented himself from home of evenings with great frequency; that in the fall of 1933 and again in the spring of 1934, he oiled and cleaned his pistol, and flashed and clicked it in her presence, by reason whereof she became alarmed and could not sleep.

There is neither allegation nor proof of direct cruelty at any time. The theory is that the defendant's conduct caused mental anguish, distress and sorrow to the plaintiff, and that thereby he was guilty of mental cruelty. We recognize that there may be cruelty of this sort, and that it is of a peculiarly insidious and destructive character. The health and happiness of a sensitive woman may be completely undermined and destroyed thereby. *Goff* v. *Goff,* 60 W. Va. 9, 53 S. E. 769, 9 Ann. Cas. 1083; *White* v. *White,* 106 W. Va. 680, 146 S. E. 720; *Arnold* v. *Arnold,* 112 W. Va. 481, 164 S. E. 850. The plaintiff has very limited corroboration of her testimony in support of her charges against the defendant. In corroboration of defendant's testimony in denial of the charges of cruel and inhuman treatment, he produces a number of disinterested witnesses who testified to the apparently proper and decorous demeanor of the defendant in the home, and of his considerate attention to his wife and children. While the record discloses that for a period of months prior to their separation, there had not existed between the parties that congeniality which had previously characterized their intimate relationship, we would clearly not be warranted in adjudging that the trial chancellor was plainly wrong in acquitting the defendant of responsibility for that unfortunate change of conditions. Wherefore, we are of opinion that the plaintiff's cross-assignment of error is not well grounded.

Neither of the parties is without blemish.

Considering the situation from all angles, we find no sound basis for depriving this man entirely of the custody of his children and of reposing it in the mother, with his limited right of visitation. We therefore cannot approve this feature of the learned Chancellor's decree.

We are of opinion that the defendant, in the same degree with the plaintiff, is entitled to the custody of the children. Other things being equal, that would mean that he should have them in his keeping for half of the time. But the tender ages of the children must be noted. Also, the problem of schooling arises and must be con-

sidered in the equation. Generally speaking, the school terms are from about September the first until around June the first. Having in mind that the children are very young, we are of opinion that, for the present, the longer period of custody in each twelve months should be reposited with the mother. Accordingly, the basis which we have adopted is that until further order of the circuit court of Mercer County, the care and custody of the children shall be with the mother from the first day of September of each year until the thirty-first day of the following May, and that through the months of June, July and August the custody shall be with the father. Necessary details, including times of visitation by each parent, should be decreed by the circuit court of Mercer County where the cause should remain on the docket for such further decrees to be rendered by the chancellor as from time to time may seem proper in furtherance of the welfare of the children and protection of the rights of the parents.

We affirm the action of the trial court in refusing to award the plaintiff a divorce, but reverse the decree with reference to the custody of the children, and remand the cause for further proceedings not at variance herewith.

*Affirmed in part; reversed in part; remanded.*