DORTHY FINNEGAN

*v.*

CHARLES FINNEGAN

(No. 10166)

Submitted January 17, 1950. Decided March 21, 1950.

*Martin Brown,* for appellant.

*Charles Ihlenfeld,* for appellee.

HAYMOND, JUDGE:

This appeal was granted upon the petition of the defendant, Charles Finnegan, from a final decree of the Circuit Court of Marshall County, entered February 14, 1949, which granted his wife, the plaintiff Dorthy Finnegan, a divorce on the ground of cruel or inhuman treatment, gave her the custody of their twelve year old son, subject to the right of the defendant to visit him for reasonable periods and at reasonable times, awarded her alimony and support and maintenance for herself and the

child and one-half of a joint bank account of the parties, and required the defendant to pay a fee to the attorney for the plaintiff and the costs of the suit.

The case was heard upon the bill of complaint of the plaintiff, which contains a specific charge of cruelty by the defendant in July, 1948, and a general charge of similar acts and threats of harm and injury to the plaintiff by the defendant on other unspecified occasions; the answer of the defendant, which denies the charges, alleges that the plaintiff abandoned and deserted the defendant and their son and took $300.00 belonging to the defendant from a trunk in their home where he had put the money, and prays that the plaintiff be required to pay the sum of $542.56 to the defendant and that he be awarded custody of the child; the exhibits filed with the pleadings; and the testimony in court of the plaintiff and the defendant and the witnesses produced by each of the parties.

The plaintiff, whose maiden name was Dorthy Helen Chambers, and the defendant were married at Wheeling in September, 1935. At the time the testimony was given in this suit on February 14, 1949, she was forty two, and the defendant was forty six, years of age. After the marriage they lived together during the greater portion of their married life at McMechen in Marshall County where their only child was born in 1936, and where they were residing at the time of the final separation on July 21, 1948. Within a period of approximately three years immediately preceding their final separation in July, 1948, because of minor disagreements the plaintiff twice left the defendant for short intervals; but on each occasion they composed their differences and, at the instance of the defendant, the plaintiff returned to their home. Since the final separation in July, 1948, the parties have not lived together as husband and wife.

The dissensions leading to the incident which resulted in their final separation appear to have developed from sales of real estate owned by the defendant for $1,800.00 and $3,500.00, and the supposed use or disposition by him

of those moneys, and a joint bank account of the parties of $485.12. In September, 1947, some time after the first sale, the defendant's brother-in-law informed the plaintiff that the defendant had told him that he intended to remain with the plaintiff until she signed the necessary papers and that after she had done so he would leave her. The second sale was concluded in June, 1948, and the plaintiff testified that afterwards, about the first of July, the defendant, who had refused her request that he deposit the money received from the sales in a joint account, told her, during an argument between them, that he then had everything in his name, that he was "going to skip out," that he would change his name, and that she would "never get" him. The defendant denied that he had made any of the statements attributed to him. The plaintiff further testified that after the defendant told her what he intended to do, she went to the bank and caused his name to be removed from their joint account of $485.12.

The plaintiff's version of the trouble which brought about her final separation from the defendant and the cruelty with which she charges him is that the day before it occurred she filed the lock on a trunk in which the defendant kept articles belonging to him; that in searching for the bank book of the joint account about which she and the defendant had argued and which she thought he had put in the trunk, she was unable to find the book but did find and take from the trunk $250.00 which belonged to the defendant; that he later discovered that she had broken the lock on the trunk; that about two thirty o'clock during the following night the defendant, who had been drinking, came into the room in which she was sleeping alone, turned on the lights, went to the trunk, seized the lock and threw it at her; that it barely missed her head and struck and dented the headboard of the bed in which she was lying; that she jumped from the bed; that he hit her left eye and knocked her to the bed; that she got up and that he struck her several times; that she tried to elude him but he followed her and grabbed her shoulder; that he followed her down the

steps of the house to the street where a police officer, who had been called to the scene, arrested him and took him to the local jail; that as a result of the defendant's attack the plaintiff's arm was "black and blue" and her eye "was bleeding"; that she and her son spent the remainder of the night at the home of a neighbor; that she returned to her home the next morning; and that after some words with the defendant, who attempted to lock her in the house and then told her to leave, she became afraid to stay and left the house. The plaintiff emphatically denied that she struck or hit the defendant, though she admitted that she "kicked at him" in her unsuccessful effort to defend herself against his attack.

The defendant denied that he attacked or struck the plaintiff. He asserts that she was the aggressor and that he merely defended himself against her attack upon him. His testimony on that point is that on the night in question he came home about eleven or eleven thirty o'clock and, after reading a newspaper, went to bed with his son in another room; that he was unable to sleep and went downstairs and again read for a time; that he was hungry and decided to go to a restaurant to eat; that, having no money in his pockets, he went to the bedroom in which the trunk was located to get a part of $300.00 which he had placed in the trunk; that he turned on the light and went to the trunk which he had previously locked and found that the lock had been broken; that the plaintiff ordered him from the room; that he went to the trunk to examine the lock; that the plaintiff then got out of bed, came toward him, tried to grab the lock which he held and began to kick and pound him; that she whirled and hit her head on a nearby chest of drawers; that she came toward him again; that he dodged her and she struck the door; that she ran downstairs and went out of the house; that she had begun to scream when he first entered the room; that he tried to quiet the child and then went downstairs and saw the plaintiff "down on the corner"; that she was still screaming; and that a crowd of people was present at that time.

As is usually the case on such occasions, no one other than the plaintiff and the defendant was present during the entire period of their quarrel or saw all that then occurred between them. Before the disturbance ended, their son, evidently awakened by the "screaming" of the plaintiff, came into the room from another room in which he had been sleeping. He testified that he was scared and put his head "down in the bed"; that when he entered the room his parents were standing; that the plaintiff "was coming toward" the defendant, who was "standing still"; and that he saw the defendant push her away. He did not see either strike the other. He did not see the defendant inflict any bruises on the plaintiff or notice, until the next day, that her eye was "black and blue."

Several witnesses produced by the plaintiff, among them some neighbors and a police officer who arrested the defendant, heard her screams and saw and described her condition shortly after the disturbance had ended and she had left the house and gone to the street. According to these witnesses the plaintiff was clad in her night clothes, barefooted, and in a state of excitement; one of her eyes was swollen, bleeding and disfigured, her face disfigured, and her right arm bruised and discolored. Some of these witnesses saw the defendant at the time they saw the plaintiff and they testified that he was dressed and that they saw no scratches or bruises upon his person. One of these witnesses testified that he heard the plaintiff, in the presence of the defendant, tell the police officer who arrested the defendant that the defendant "beat her" and that the defendant made no denial of that statement. In his testimony the defendant did not refer to this incident.

The plaintiff testified that the defendant hit or beat her on previous occasions but her testimony as to those occurrences is entirely without corroboration.

There is nothing in the record to indicate any lack of good character in either of the parties to this suit. Though the evidence shows that the plaintiff is quick tempered,

at times exhibits a disagreeable disposition, and is exacting in financial matters, she has kept and managed a good home for the defendant and has taken excellent care of their child. There is no showing of any serious misconduct upon her part. The defendant at times drinks intoxicants and is critical of the family of the plaintiff, but it does not appear that he habitually drinks excessively or that his conduct in that respect interferes with his regular employment. At the time of the hearing of this case he was regularly employed as a railroad machinist at the rate of $1.39 per hour and his annual earnings from wages were approximately $2,700.00. Until the parties finally separated after their quarrel on July 21, 1948, the defendant adequately supported and maintained the plaintiff and their child. Since their separation, except short periods spent with neighbors or friends, the plaintiff has been living with her mother at Cameron, where she now makes her home, and the defendant, who now has the custody of the child, has been and still is occupying the house owned by him in McMechen in which he and the plaintiff lived before their separation.

The plaintiff owns no property, is not employed and has no present income. The defendant, in addition to the dwelling in McMechen, has approximately $4,100.00 in money and is regularly employed. Each of the parties is fond of their child and each of them appears to be a suitable person for his care and custody. The child testified in behalf of the defendant and expressed his preference to live with the defendant at McMechen instead of living with the plaintiff at Cameron.

By his assignments of error the defendant seeks a reversal of the final decree on substantially these grounds: (1) The bill of complaint does not sufficiently charge, and the proof offered by the plaintiff does not establish, cruel or inhuman treatment of the plaintiff by the defendant; (2) the decree is based upon the uncorroborated testimony of the plaintiff; (3) the plaintiff was guilty of inequitable conduct barring relief in equity; (4) the plaintiff is not entitled to have or retain the money of the

defendant which she took without his knowledge or consent from the trunk in which he had put it; and (5) the defendant is entitled to and should have been awarded the custody of their child who expressed his preference to live with him rather than with the plaintiff.

The allegation of the bill of complaint respecting cruel or inhuman treatment of the plaintiff by the defendant is that the defendant, at a specified time and place, "struck, hit, beat and otherwise assaulted said plaintiff and then and there caused said plaintiff great physical injury; that said defendant has on numerous occasions assaulted said plaintiff and has threatened said plaintiff with bodily harm and injury; that by reason of the conduct of said defendant the said plaintiff has become highly nervous and has suffered great mental anguish, sorrow and distress; all of which rendered cohabitation with said defendant miserable, unsafe and impossible; that because of the above mentioned conduct on the part of the said defendant and because said plaintiff was placed in reasonable apprehension of bodily harm said plaintiff was forced to leave the home which she occupied with said defendant."

The quoted language sufficiently charges the defendant with cruel or inhuman treatment within the meaning of the statute which authorizes a divorce on that ground, and the testimony of the plaintiff relating to the specific acts of the defendant in striking and beating her during the night of July 21, 1948, if corroborated, as required by Section 11, Article 2, Chapter 48, Code, 1931, is adequate to establish the cruel or inhuman treatment charged against the defendant in the bill of complaint.

In order to satisfy the statute which provides that in a suit for divorce no decree shall be granted upon the uncorroborated testimony of the parties, Code, 1931, 48-2-11, it is not necessary to produce direct testimony of other witnesses to every act testified to by the party who seeks a divorce; and sufficient corroboration of the testimony of a party to a divorce suit occurs when a considerable number of important and material facts are established

by other witnesses or there is other evidence, circumstantial or direct, which strongly tends to support and confirm the testimony of the party who seeks a divorce. *Smith* v. *Smith,* 125 W. Va. 489, 24 S. E. 2d 902; *White* v. *White,* 106 W. Va. 680, 146 S. E. 720. Testimony of witnesses that they saw bruises upon the wife's body the next day after an altercation between her and her husband is corroboration of her testimony that the husband beat her, *Fussell* v. *Fussell,* 182 Va. 720, 30 S. E. 2d 555; and testimony of the witnesses who heard the screams of the plaintiff and saw her in her night clothes in a state of agitation soon after she went from the house to the street and who then or the following day observed and described the blood, her discolored eye, and the bruises and the discolorations on her arm, corroborates her testimony that the defendant struck and beat her.

The contention that the plaintiff was guilty of inequitable conduct and does not come into a court of equity with clean hands is without merit. The statement of the defendant to the effect that when he had or could get control of the money from the sales of the real estate he intended to leave the plaintiff, testified to by the plaintiff and supported by the testimony of the defendant's brother-in-law, prompted the acts of the plaintiff in changing their joint bank account to her name, and in taking the money of the defendant from the locked trunk. Though these acts can not be commended, they furnish no sufficient provocation or justification for the cruelty of the defendant in attacking her in her bedroom and in severely beating her. The acts of the plaintiff, as disclosed by the record in this case, in nowise resemble the inequitable conduct of the plaintiffs in the cases of *Wolfe* v. *Wolfe,* 120 W. Va. 389, 198 S. E. 209; *Myers* v. *Myers,* 127 W. Va. 551, 33 S. E. 2d 897; and *Cottle* v. *Cottle,* 129 W. Va. 344, 40 S. E. 2d 863, cited and relied on by the defendant; and for that reason the rule which operated in each of those cases to deprive the plaintiff of a divorce because of her inequitable conduct does not apply to the plaintiff in this suit.

Upon the conflicting evidence of the plaintiff and the

defendant and the corroborative testimony of numerous witnesses produced in behalf of the plaintiff, the finding of the trial chancellor upon the facts is in favor of the plaintiff. In equity the finding of fact of the trial chancellor will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence. *Taylor v. Taylor,* 128 W. Va. 198, 36 S. E. 2d 601; *Pickens v. O'Hara,* 120 W. Va. 751, 200 S. E. 746; *Shipper v. Downey,* 119 W. Va. 591, 197 S. E. 355; *Spradling v. Spradling,* 118 W. Va. 308, 190 S. E. 537; *First National Bank of South Charleston v. McCloud,* 112 W. Va. 537, 165 S. E. 799; *Arnold v. Arnold,* 112 W. Va. 481, 164 S. E. 850; *Robinson v. Robinson,* 112 W. Va. 39, 163 S. E. 633; *Linger v. Watson,* 108 W. Va. 180, 150 S. E. 525; *Kincaid v. Evans,* 106 W. Va. 605, 146 S. E. 620. The rule just stated operates and controls in suits for divorce. *Taylor v. Taylor,* 128 W. Va. 199, 36 S. E. 2d 601; *Hurley v. Hurley,* 127 W. Va. 744, 34 S. E. 2d 465; *Crouch v. Crouch,* 124 W. Va. 331, 20 S. E. 2d 169.

The statute, Code, 1931, 48-2-15, as amended, provides in part that "Upon decreeing a divorce, the court may make such further decree as it shall deem expedient, concerning the maintenance of the parties, or either of them; and upon decreeing the annulment of a marriage, or a divorce, the court may make such further decree as it shall deem expedient, concerning the care, custody, education and maintenance of the minor children, and may determine with which of the parents the children or any of them, may remain; * * *." This language vests discretion in the trial chancellor respecting the maintenance of the parties to a suit for divorce and their minor children and the custody of such children. *Bailey v. Bailey,* 127 W. Va. 826, 35 S. E. 2d 81; *Settle v. Settle,* 117 W. Va. 476, 185 S. E. 859; *White v. White,* 106 W. Va. 680, 146 S. E. 720; *Buseman v. Buseman,* 83 W. Va. 496, 95 S. E. 574. This discretion, though subject to judicial review, will not be disturbed on appeal unless its abuse by the trial chancellor clearly appears. *Walker v. Walker,* 109 W. Va. 662, 155 S. E. 903; *Burdette v. Burdette,* 109 W. Va. 95, 153 S. E. 150; *Hale v. Hale,* 108 W. Va. 337, 150 S. E. 748; *Conner v.*

*Harris,* 100 W. Va. 313, 130 S. E. 281; *Norman* v. *Norman,* 88 W. Va. 640, 107 S. E. 407; *Reynolds* v. *Reynolds,* 72 W. Va. 349, 78 S. E. 360; *Henrie* v. *Henrie,* 71 W. Va. 131, 76 S. E. 837; *Goff* v. *Goff,* 54 W. Va. 364, 46 S. E. 177; *Lutke* v. *Lutke,* 198 Okla. 131, 176 P. 2d 496; *Gilcrease* v. *Gilcrease,* 176 Okla. 237, 54 P. 2d 1056. In the exercise of its discretion, when the custody of children is involved, the court is primarily concerned with their welfare, and that paramount and controlling factor is the "polar star" by which its discretion must be guided. *Frame* v. *Wehn,* 120 W. Va. 208, 197 S. E. 524; *Settle* v. *Settle,* 117 W. Va. 476, 185 S. E. 859; *Arnold* v. *Arnold,* 112 W. Va. 481, 164 S. E. 850; *Reynolds* v. *Reynolds,* 109 W. Va. 513, 155 S. E. 652; *State ex rel. Palmer* v. *Postlethwaite,* 106 W. Va. 383, 145 S. E. 738; *Conner* v. *Harris,* 100 W. Va. 313, 130 S. E. 281. When a husband and a wife are divorced because of the marital misconduct of one of them the law generally favors the award of custody of the children to the innocent spouse. *Settle* v. *Settle,* 117 W. Va. 476, 185 S. E. 859; *Straughan* v. *Straughan,* 115 W. Va. 639, 177 S. E. 771; *Rierson* v. *Rierson,* 107 W. Va. 321, 148 S. E. 203; *Nix* v. *Nix,* 186 Va. 14, 41 S. E. 2d 345.

Under the foregoing firmly established principles, this Court should not disturb the action of the circuit court in decreeing to the plaintiff the money of the defendant taken by her from the trunk, which that court found to be $250.00 instead of $300.00 as contended by the defendant, in lieu of support and maintenance to which she was entitled from the time of the separation on July 21, 1948, to February 14, 1949, the date of the decree, and in awarding the custody of the child to the plaintiff.

It was the duty of the defendant to provide for the support of his wife during the time which elapsed between the final separation of the parties and the entry of the final decree and it does not appear that the defendant, during that period of approximately six months, contributed any sum whatsoever for the support and the maintenance of the plaintiff. In requiring the defendant to discharge his duty by decreeing to the plaintiff the money

taken by her in lieu of the support which the defendant had failed to provide, the circuit court neither exceeded its authority nor abused its discretion.

The evidence indicates, as already pointed out, that each of the parties is a suitable person to have the custody of their twelve year old son. Though the plaintiff does not possess a home of her own her testimony is that the home of her mother at Cameron where the plaintiff is now residing is available for her and the child. The defendant now maintains and lives in his home in McMechen. The social, moral and educational advantages of each of these homes and communities appear to be equally suitable to the welfare of the child. Both parents are fond of him; he is fond of both of them; and each parent is able to give him proper care and attention. It appears, however, that while the parties lived together, the plaintiff devoted much more time and attention than the defendant to the care, the moral training and the education of the child, and that, in the now existing circumstances, the custody of the child by the plaintiff will promote his interest and welfare. The evidence shows that she is the innocent spouse and for that reason her right of custody is superior to that of the defendant. The child testified that he preferred to remain with the defendant in McMechen rather than to live with the plaintiff in Cameron, but it is reasonably clear, from the evidence, that this preference is in some measure due to the increased attention given him by the defendant after he and the plaintiff separated, that this subsequent change in the attitude of the defendant toward the child was accomplished by the defendant for the purpose of inducing the child to stay with him, and that, in his desire to remain with the defendant, the child entertained the belief that his mother might return to her former home. Though a court will consider the wishes of a child of tender years in a case involving an award of custody, its expressed preference does not control or govern the action of the court in making such award. *Rust* v. *Vanvacter,* 9 W. Va. 600; *Wells* v. *Wells,* Mo. App., 117 S. W. 2d 700; *Pierce* v. *Pierce,* 213 La. 475, 35

S. 2d 22; *State ex rel. Sevier* v. *Sevier,* 141 La. 60, 74 S. 630. In discussing the question of the effect to be given the wishes of a young child with respect to an award of its custody, this Court, in *Rust* v. *Vanvacter,* 9 W. Va. 600, in an opinion by Judge Alpheus F. Haymond, said: "In the case of *State* (Herrick relator) v. *Richardson,* 40 New Hampshire 272, it was held that the action of the court should not be controlled by the wishes of a child ten years of age. In this State, infants are not permitted to choose their guardians until they are fourteen years old. The law in this respect must be founded on the presumption that infants, prior to that age, are incompetent to make a proper or judicious selection." Under the evidence, the circuit court did not abuse its discretion in awarding the custody of the child to the plaintiff and its action in that respect will not be interfered with by this Court.

As no prejudicial error appears in the case, the final decree of the circuit court is affirmed.

*Affirmed.*