## THE BANK OF THE VALLEY *vs.* THE BANK OF BERKELEY.

### January Term, 1869.

1. The object of the service of process is to bring the party into court. A judgment by default with process badly executed would not be legal.

2. By appearance to the action in any case, for any other purpose than to take advantage of the defective execution or the non execution of process, a defendant places himself precisely in a situation in which he would be if process were executed upon him, and he thereby waives all objection to the defective execution or the non execution of process upon him.

3. The question of non residence of a defendanct can only be raised by plea in abatement.

4. Where a bill of exceptions certifies the evidence given and not the fact proved, and where it does not appear that the evidence certified was all the evidence before the jury on which they found their verdict, it does not affirmatively appear that the verdict is contrary to evidence nor that the court below committed any error in refusing to grant a new trial, on the ground that the verdict was against evidence.

"The Bank of Berkeley, in Virginia," brought an action of assumpsit in Berkeley county, in October, 1865, against the "Bank of the Valley, in Virginia," claiming 4,313 dollars and 78 cents with interest.   An attachment issued in March, 1866, against the defendant as a non resident debtor and was executed on several parties as garnishees.   An order of publication was had at November rules, 1865, which the deputy clerk affirmed he had posted at the front door of the court-house, but it did not appear to have been published in any newspaper.

In April, 1866, the case was continued, upon the defen

* This case was argued at July term, 1868, when Judge Harrison was absent from illness.

dants' motion, at its costs.   A like order was had at the May term, 1867.   At the June term, 1867, the parties appeared by attorney, and the defendant moved to dismiss the summons or send the cause back to rules upon the ground that process had not been duly executed on the defendant, and that the summons had not been properly sued out, but the court overruled the motion and the defendant excepted. It pleaded non-assumpsit, on which issue was joined.   A trial was had at September term, 1867, and verdict was rendered for the plaintiff, and judgment entered thereon.

There were two bills of exception taken in the case, one to the refusal of the court to dismiss the summons or send the case back to rules, because of its not having been properly served on the defendant, and because it could not be sued out in Berkeley county, the defendant claiming to be an incorporation of the State of West Virginia, having three branches in the State doing business, until March, 1866, when it made an assignment, for the benefit of creditors, and having introduced evidence tending to prove these facts, which was included in the bill.   The other bill of exceptions was taken to the refusal of the court to set aside the verdict and grant a new trial upon the ground that it was against evidence and in disregard of the instructions of the court.   It is not necessary to set out the evidence here, as this court decided that it would not look into that question from the character of the bill of exceptions.

The defendant obtained a supersedeas from this court.

*Charles J. Faulkner* for the plaintiff in error, maintained.
1. That the plaintiff, in proceeding against the Bank of the Valley as a *non-resident* or *foreign* corporation, and in attaching the assets of that institution in the State, had misconceived the law and mistaken the remedy.   The Bank of the Valley was not a foreign corporation, but a West Virginia corporation, declared and recognized as such by the constitution of this State.   It derived its existence from a law passed by the legislature of Virginia on the 5th of Feb-

ruary, 1817, which law was in full force at the period of the organization of the new State. West Virginia, in forming a new political organization within the limits of the old State, did not repudiate the laws which at that moment controlled its inhabitants. By the well settled principles of international and municipal jurisprudence, the laws in force at the period of separation continued the laws of the new State until modified or repealed. But this was not left to the general rule of law applicable to such changes in State organization. It was made a part of our constitutional system, and it was declared that the laws of the State of Virginia, in force on the day of the adoption of the constitution and not repugnant thereto, *shall be and continue the law of this State* until altered or repealed by the legislature. 8th sec., art. 11. The constitution makes no distinction between public and private laws. All are declared to be the laws of this State if not repugnant to the principles and provisions of that instrument. But the law establishing the Bank of the Valley has been adjudicated to be a public law. *Stribling* vs. *The Bank of the Valley*, 5 Rand., p. 133. Its charter was granted by the legislature, on the call of the people generally, for great public and State purposes, and is regarded by our courts as a public, not a private corporation. *Idem*, p. 169. It had three of its largest and most flourishing branches in this State; one, if not all of them, transacting business until the spring of 1866, the date of its general assignment. Its notes have formed a large part of our circulation since the creation of the new State, its real and personal assets are large, and many of the citizens of West Virginia are owners of the stock and members of the corporation. There being nothing in its charter repugnant to the constitution of this State, it is a law of this State, and has thus been made a West Virginia corporation as fully as if an act of the legislature of this State had in *totidem verbis* re-enacted the law of the 5th of February, 1817.

The Baltimore and Ohio railroad company, a corporation originally chartered by the State of Maryland, but whose

charter was subsequently recognized and adopted by Virginia, has for that reason been adjudged by the supreme court of appeals of Virginia to be a Virginia corporation, liable to be sued like any other resident of the State, and to be garnished and made home defendant in proceedings by foreign attachment against non resident debtors. 12 Grattan, p. 659. Deriving this character of a Virginia corporation from a law of Virginia passed prior to the adoption of the constitution of our State, it has consequently been regarded, since the creation of the new State, as a West Virginia corporation, and recognized as such in all of our courts.

So the Hempfield railroad, originally chartered by the State of Pennsylvania, has for similar reasons been declared to be a Virginia corporation. 1 West Virginia Reports, p. 308.

2. If not a foreign corporation, suit could only have been brought against the bank in one of the counties where a branch was located. 7 sec., chap. 170, Code of 1860. The suit was, therefore, improperly brought in Berkeley, and should have been dismissed.

3. The circuit court erred in refusing to set aside the verdict and to grant a new trial in the case. The verdict was in excess of what it ought to have been 2,000 dollars. The jury should have given the Bank of the Valley credit for the 2,000 dollars, which the Bank of Berkeley, on the 24th of February, 1862, directed to be placed to its credit in the Bank of the Commonwealth, and of which notice was given to the Bank of Berkeley that its request would be complied with. The transaction was substantially this: On the 25th of February, 1862, at the request of the Bank of Berkeley, the Bank of the Valley transferred upon its books 2,000 dollars of an amount due it by the Bank of the Commonwealth, and charged the Bank of Berkeley, to which it was indebted, that amount; thus paying so much of its debt to the Bank of Berkeley and collecting that amount of the debt due it by the Bank of the Commonwealth. When the entries were made upon the books of the Bank of the Val-

ley, the legal right of the Bank of Berkeley to 2,000 dollars of the debt due by the Bank of the Commonwealth was perfect, and if the Bank of the Commonwealth was now perfectly solvent, the Bank of Berkeley could claim its right to the fund, and no subsequent act of the Bank of the Valley could impair that right.

*Stanton & Allison* for defendant in error.

MAXWELL, J.   This was an action of assumpsit brought by the Bank of Berkeley against the Bank of the Valley, in Virginia, in the circuit court of Berkeley county.   An order of publication was had in the case on the 6th day of November, 1865, and there was also an attachment against the estate of the defendant.   So far as appears from the record, process was served only by posting a copy of the order of publication at the court-house door of Berkeley county.   The declaration was filed at rules and office judgment entered.   On the 7th day of April, 1866, as appears from the record, the cause was, upon the motion of the defendant and at its costs, continued until next term of the said court.

On the 28th day of May, 1867, as appears from the record, the following entry was made in the said cause: "On motion of the defendant, by his attorney, and at his costs, this cause is continued until the next term of this court."

And on the 1st day of June, 1867, the following order was entered: "This day came the parties by their attorneys and the defendant moved the court to dismiss the summons or send the cause back to rules, upon the ground that process had not been duly executed upon the said defendant, and that the summons has not been properly sued out in this county, which motion the court overruled.   Thereupon the defendant excepted, and his bill of exceptions was duly signed and enrolled."

The order further recites that the defendant was then required to plead, and the defendant filed the plea of non-assumpsit.   A trial was had and judgment rendered for the

plaintiff, from which the defendant has obtained a superse-deas to this court.

It is now claimed here that the court erred in refusing to dismiss the summons or send the cause back to rules, upon the ground that process had not been duly executed. The order of publication was not, as disclosed by the record, published in any newspaper, as required by law. Process in the cause was therefore not executed upon the defendant below. If the defendant had made a motion on its first appearance to remand the cause to rules, because process was not executed properly the court ought to have made such an order, and it would have been gross error if it had not done so. It will not do to suppose that if the defendant had on its first appearance made such motion, it would by its appearance to make the motion have waived. the proper execution of process. *Hickman* vs. *Early*, 6 Grat., 210.

But the question arises upon the record in this case, did not the defendant waive the proper execution of process against it by appearing generally and moving the two continuances of the cause which the record shows? The second continuance is more than a year subsequent to the first and no orders seem to have been made in the cause in the intervening terms of the court.

The object of the service of process is to bring the party into court. A judgment by default, with process badly executed, would not be legal. By appearance to the action in any case for any other purpose than to take advantage of the defective execution or the non execution of process, a defendant places himself precisely in the situation in which he would be if process were executed upon him, and he thereby waives all objection to the defective execution or the non execution of process upon him. I think, therefore, the defendant in this case, by its motions to continue, waived all errors existing in the execution of process. *Williams & Keys* vs. *Campbell*, 1 Wash., 153; *Buckingham et al.* vs. *McLean, &c.*, 13 Howard, 150; *Ferran & Brown* vs. *The United States*, 3 Peters, 459; *Gracie* vs. *Palmer*, 8 Wheat., 699; *Pollard* vs. *Dwight*, 4 Cranch, 428.

The next question attempted to be raised, that the defendant below was not a non resident, could only be raised by plea in abatement.

.Another cause of error assigned is that the court refused to set aside the verdict of the jury and grant a new trial because the verdict was against evidence.

The bill of exceptions certifies the evidence given, and not the facts proved. Nor does it appear that the evidence certified was all the evidence before the jury on which they found their verdict, and for anything that appears they may have had other evidence. It does not appear, therefore, affirmatively, that the verdict is contrary to the evidence, nor that the court committed any error in refusing to grant a new trial.

The attachment sued out in the cause appears to be yet pending in the court below, and whether it will be proper to dismiss it or to take an order for the application of the effects attached to the payment of the judgment will depend on the evidence disclosed on the pending motion to dismiss the attachment.

The judgment complained of must be affirmed, with damages and costs to the defendant in error.

The president concurred.

JUDGMENT AFFIRMED.