EARL SMITH *v.* C. N. PEW, *Executor, etc., et al.*

(No. 8150)

Submitted November 5, 1935. Decided December 10, 1935.

*Young & McWhorter* and *U. G. Young, Jr.,* for appellant. *J. M. N. Downes,* for appellees Elizabeth and Walter A. Peterson.

WOODS, JUDGE:

This is a creditors' suit, to subject the real estate of which Bettie Abbott died seized to payment of debts, particularly one due Earl Smith in the sum of $1,250.00, and evidenced by a due bill bearing date June 16, 1926. The plaintiff appeals from a decree denying his claim and dismissing the bill.

John R. Abbott died, intestate, in 1872, seized of a tract of 67¼ acres in Upshur County, which descended to his three children, Bettie, Thomas and Jacob. This tract was carried on the land books up to and including 1930 in the name of "John R. Abbott's Estate." After Thomas' death (July 16, 1918), his interest in the foregoing, together with 58½ acres in his own right, passed under statute to Bettie and Jacob. In 1920, the Petersons, recently married, moved into the mansion house occupied by Bettie and Jacob, in response to Jacob's offer (transmitted through a letter by Bettie to Mrs. Peterson, who was a second cousin to the Abbotts) to convey his half interest in the 124 acres to Earl Smith and wife and the Petersons jointly. Jacob made such a deed in 1921, reserving and granting a life estate after his death to Bettie Abbott. Jacob died in 1922. Thereafter until her death (March 4, 1930) Bettie was in full control of the property. She died at the age of ninety-one years.

It appears from Smith's testimony that he began doing work on the farm for Bettie as early as 1917, and continued thereon until the summer of 1926. His wife (Madge) was also a second cousin of the Abbotts. Smith and wife resided a short distance from the Abbott farm. A number of witnesses support Smith in reference to his work on the farm, and also testify to doing work thereon, over period 1919 to 1926, receiving their compensation therefor from Smith. It appears that the Abbotts had a portion of the farm under lease prior to Thomas' death. The lease expired shortly after Jacob's death; and from that time until the summer of 1926 Smith rented the same from Bettie Abbott.

Smith claims that along about the middle of June, 1926, he settled with Bettie for rent remaining due, as well as for certain loans, and that at the time Bettie Abbott, in return for the services rendered by Smith, at her request, on portion

of farm not under lease, executed the due bill. He says further that Bettie Abbott at the time instructed him to retain the same until after her demise, and, if perchance, she was compelled to execute a will giving all of her interest in the property to the Petersons, instead of leaving one-half to them and one-half to him (Smith) and wife, that he should present the same for payment, otherwise not.

Bettie Abbott died leaving all her real estate to the Petersons. The personal property was consumed by funeral expenses, and other bequests. C. W. Pew, after qualifying as executor under the will, refused to recognize the due bill. Thereupon the present suit was instituted.

The defendants attack the due bill on the ground (1) that the purported signature of Bettie Abbott thereon was a forgery, and (2) that there was no consideration therefor. The commissioner in chancery, after considering a mass of depositions, which failed to show that Bettie had an interest in any of the land prior to Thomas' death, found for the defendants on the foregoing issues. And the chancellor, after hearing evidence in open court relative to Bettie's interest in John R. Abbott's estate, entered a final decree in the cause confirming the commissioner's report in every respect.

In view of the testimony of C. N. Pew, executor of Bettie Abbott's estate, and Walter Peterson, one of the devisees under her will, with reference to the genuineness of the due bill, and business relationship between Bettie Abbott and Earl Smith, the latter's testimony touching the whole transaction between him and Bettie Abbott became admissible. Code 1931, 57-3-1.

On the issue of the genuineness of the signatures on the due bill and receipt, respectively, we have plaintiff's statement that Bettie Abbott executed the same in his presence. He is supported by three bank cashiers, one from the institution with which Bettie Abbott had business dealings. Each testified that the questioned signatures were similar to the admitted ones, and, in their opinion, genuine. Defendants countered with Mr. Pew, executor, G. W. Reger, a brother-in-law of Pew's and a neighbor of Abbott's, Walter Peterson and Elizabeth Peterson. All testify, in varying degrees, to

familiarity with Bettie Abbott's signature, and state that, in their opinion, the questioned signatures are not genuine. Reger and Peterson testify to differences, which, upon further observation, are found to exist in certain of the admitted signatures. Mrs. Peterson would not attempt a reason, except that they seemed different.

The commissioner, after considering the foregoing, together with the several exhibits, found the disputed signatures to be forgeries. This decision, as the report shows, was based primarily on the ground that the expert witnesses would not state positively, on cross-examination, that the signatures were in fact genuine. The commissioner points out that the alleged signatures could have all the general characteristics and yet not be the genuine. It is perfectly apparent to us, in view of the exhibits presented with the record, that defendants' evidence does not stand on any higher plane, if as high, as that of the three cashiers. The positive statement of Smith that he saw the same executed by Bettie Abbott, tips the balance decidedly in favor of the plaintiff on this issue.

But, say defendants, the circuit court cannot ignore a finding of the commissioner, on conflicting evidence; and, further, the appellate court is bound by the finding of the circuit court.

A finding of fact by the commissioner, though entitled to weight, is not conclusive. If it is not justified by the evidence, the Court may set the same aside and decree according to its own view of the evidence. *Highland, Receiver, etc.* v. *Ice Company*, 75 W. Va. 513, 84 S. E. 252. This brings us to the position taken by the chancellor on the issue of forgery. While it is true that the decree specifically overrules the several exceptions to the commissioner's report, including the finding of forgery, it also makes the opinion of the court a part of the record. In that opinion the court after determining that there was no consideration, makes the following observation on the issue of forgery: ''It seems to me from a comparison of the handwriting in the various exhibits and from the testimony in the case that Bettie Abbott signed both the due bill and the receipt, but as stated above, as there was no consideration for the due bill, and it cannot be considered as a

testamentary bequest, I hold that it is immaterial whether she signed it or not.'' While the decree in overruling the commissioner's report *in toto* was the act of the court, yet we believe that the chancellor's opinion on the issue of forgery is of evidentiary value, and may be taken into account by this Court in determining whether the finding of forgery is contrary to the plain preponderance of the evidence. ·

We now come to the question of whether or not there was in fact a consideration for the execution of the due bill. It is apparent at the outset that the commissioner's report on the matter of consideration was based on. a wrong premise, and, therefore, not entitled to any weight here. And while the court's written opinion is on the same premise, it must be assumed in the face of the decree, that the chancellor did not consider that previous ownership in Bettie Abbott, in view of facts, was sufficient to warrant a change in the final outcome. However, as we view it, the fact that Bettie Abbott did have a one-third interest in 1917 was a strong circumstance on the question of whether or not she did take an active part in the management of the farm. Taking Smith's testimony into account, he worked from 1917 for Bettie Abbott, who held a one-third interest in the $67\frac{1}{4}$ acres. And, especially is this true, after Thomas' death in 1918, in view of Jacob's inability to direct. It will be noted that it was Jacob's condition that brought the Petersons into the picture in 1920. While some of the evidence of defendants may tend to show that Smith's work could not have amounted to more than $80 to $100, this does not attempt, as we read the record, to take into account amounts paid to third persons for labor, hired and paid by Smith, at Bettie Abbott's instance and request. While it will be admitted that the consideration will in nowise compare with the amount set out in the due bill, we must remember that the adequacy of consideration does not enter into account, where it is shown that the paper is in the nature of a testamentary bequest.

According to the rule announced in *Hancock* v. *Smith*, 101 W. Va. 535, 541, 133 S. E. 131, that a promissory note given by one in declining years to a near relative for personal service rendered by the donee to the donor is so much in the

nature of a testamentary disposition of property that the maker's estimate of the value of the services is a matter for his determination alone. The same doctrine is enunciated in *Bade, Admr.* v. *Feay,* 63 W. Va. 166, 61 S. E. 348, where it is held that inadequacy of consideration cannot avail against such claim, the court saying: "This rule is qualified when the transaction is one in the nature of a testamentary disposition." There is no doubt in the instant case that the maker of the due bill was in her right mind up to the time of her death. In fact the witnesses on both sides testify to her unusual astuteness.

Since we are of opinion that the due bill, considering the time it was made, and the purpose for which made, was in the nature of a testamentary paper, the value of the services rendered therefor would not become an issue in this case.

After a consideration of the whole record, we are of opinion that the finding of the chancellor is contrary to the plain preponderance of the evidence, and accordingly reverse the decree and remand the cause. *Myers* v. *Land Co.,* 107 W. Va. 632, 149 S. E. 819.

*Reversed and remanded.*