HALLIE L. HARBERT

v.

LULU M. HARBERT

(No. 9884)

Submitted September 23, 1947. Decided November 11, 1947.

*Creed S. Simons* and *L. G. Williams,* for appellant.

*Wyatt & Randolph, John B. Wyatt* and *Byron Randolph,* for appellee.

KENNA, JUDGE:

In this divorce proceeding brought in the Circuit Court of Harrison County on March 28, 1945, Hallie L. Harbert sought a decree against his wife, Lulu M. Harbert, on the ground of cruel and inhuman treatment. The defendant filed her cross-bill and answer alleging constructive desertion, praying that she be awarded alimony *pendente lite,* attorneys fees and separate maintenance upon final hearing. At the conclusion of the testimony he filed before the special commissioner in chancery, to whom the case had been referred, an amended and supplemental bill including adultery and naming a corespondent. To this defendant did not plead. From a decree for the plaintiff, based upon a confirmed report of cruel and inhuman treatment, this Court granted the prayer of the defendant wife's petition for an appeal.

The five assignments of error turn upon two exceptions to the report of the special commissioner in chancery, both of which are based upon the insufficiency of the plaintiff's proof and consequently it is necessary to discuss what we regard as the material facts developed by the testimony of both the plaintiff and the defendant.

The plaintiff was married to the defendant at Lumberport, Harrison County, on the ninth day of May, 1942, when he was fifty-three and she was forty-nine years of age. Both had been married before, she having a married daughter and he six living children, three of whom lived with him at his home on a farm near Brown, Harrison County, the other three being married. The three children who lived with the plaintiff were twin boys, seventeen years old, and a daughter, aged eighteen. His mother, who was elderly and required practically constant physical care, also lived with him. After the marriage they went to live on his farm near Brown. His occupation was

carpentry and at that time he was employed in the City of Morgantown, commuting daily. Later he was employed at New Martinsville and after he had been there a short time he rented an apartment and Mrs. Harbert lived with him. They afterwards moved back to his home at Brown where they separated in March, 1944, he suing for a divorce on the ground of cruel and inhuman treatment. On the thirtieth of September, 1944, a paper was executed and acknowledged by Mr. and Mrs. Harbert that recites that at the instance of the wife seeking reconciliation and the dismissal of the pending divorce proceeding she "proposed to her husband that she would not hereafter give him cause to again seek a divorce from her"; that in the event she did she would not ask for counsel fees, suit money, court costs and alimony and, further, Mrs. Harbert was to pay Mr. Harbert one thousand dollars cash, he agreeing to dismiss the pending proceeding with the understanding "that should the said wife again give said husband cause for a divorce" she would not require of him counsel fees, et cetera. After the execution of the paper they went back to the Brown place and lived together as man and wife. The record is not clear, but apparently his mother had died before the Harberts moved to New Martinsville.

The claim of the husband is based upon the contention that the wife was a confirmed shrew: that she insisted that she should handle his money, fussed at him constantly, kept him from sleeping at night and impaired his health to an extent that caused him to lose his job. Undoubtedly Mrs. Harbert is a woman who lacks self control. A number of instances that occurred during the hearings before the special commissioner demonstrate that fact beyond doubt. Likely she is not a desirable person with whom to live. However, we cannot say that this record shows that her conduct toward her husband had been cruel and inhuman. As far as his health is concerned, the report of the special commissioner is that "plaintiff's health, habits and conduct are good." However, the commissioner also reports: "The record shows the plaintiff

could not obtain proper rest and sleep while living with the defendant, that as a result thereof he could not properly perform his work and his health and nerves were injured by reason of the defendant's improper conduct." It is difficult to review a record the transcript of which largely consists of innumerable instances of disagreement, most of which are controverted, but we do not believe that there is proof to sustain the commissioner's finding. The plaintiff's health is not now bad and there is no evidence that it has been except his uncorroborated statement. His only loss of employment shown by this record followed the day that he went to Clarksburg for the purpose of bringing this proceeding and reported late for duty. Far from controlling the plaintiff's financial affairs, the defendant paid one thousand dollars to him as the price of a reconciliation. This record shows beyond peradventure that these persons are unhappily married and that they likely can never get along together. However, marriage is not a status that should be approached under the belief that if a person does not like it he can quit. The books, including the West Virginia Reports, are full of cases expressly holding that mere incompatibility is no ground for granting divorce. *McLaughlin* v. *McLaughlin,* 126 W. Va. 498, 29 S. E. 2d 1; *Smith* v. *Smith,* 125 W. Va. 489, 24 S. E. 2d 902; *McKinney* v. *McKinney,* 77 W. Va. 58, 60, 87 S. E. 928; *Wills* v. *Wills,* 74 W. Va. 709, 82 S. E. 1092. See also 17 Am. Jur. 179. Beyond doubt, with an invalid mother, twin boys and a daughter living with him on a country place near a small town, marriage to the plaintiff was far from being a pleasing adventure to the defendant, and although there was nothing reprehensible in the plaintiff's attitude toward other women shown in this record, at least two occurrences that appear would undoubtedly trouble a suspicious person.

The special commissioner declined to consider the amended bill of complaint attempted to have been filed before him after the conclusion of the testimony. In this we are of opinion that he was right. It attempted to set up an entirely separate ground for relief from that alleged

in the original bill and consequently could be filed only by an order remanding the cause to rules to be again matured. *Gray* v. *Gray,* 120 W. Va. 498, 199 S. E. 361; *First National Bank at Williamson* v. *King,* 121 W. Va. 290, 3 S. E. 2d 523; *Cochran* v. *Cochran,* 130 W. Va. 605, 44 S. E. 2d 828 (filed October 28, 1947).

We realize that this case presents one of those regrettable matters in which the discussion of questions of fact in an opinion cannot lay the basis for an admittedly logical conclusion. Our conclusion, however, based upon an examination of the record that cannot be recounted in an opinion, is to reverse the decree of the Circuit Court of Harrison County and remand the cause for further development should either party be so advised.

*Reversed.*