CYRUS S. SMITH

*v.*

ELIZABETH M. SMITH

(No. 10545)

Submitted April 28, 1953. Decided June 9, 1953.

*Alan G. Bolton,* for appellant.

*Bonn Brown,* for appellee.

HAYMOND, PRESIDENT:

In April, 1952, the plaintiff Cyrus S. Smith instituted this suit in the Circuit Court of Randolph County to obtain a divorce from his wife, the defendant Elizabeth M. Smith, on the ground of cruel or inhuman treatment. Upon a hearing of the case, at which the only evidence introduced consisted of testimony in behalf of the plaintiff, the circuit court, by decree entered December 5, 1952, granted the divorce as prayed for by the plaintiff and awarded him the custody of the two infant children of the plaintiff and the defendant, a girl three and one half years old and a boy one year old at the time of the hearing in October, 1952. From that decree this Court granted this appeal upon the application of the defendant.

The parties were married in 1946 at Duluth, Minnesota, and shortly after their marriage they came to Elkins, in Randolph County, West Virginia, where they lived together as husband and wife until February 6, 1952, when the wife, at night and without the prior knowledge of her husband, left their home in Elkins, took the two children with her, and went to the State of Minnesota where they appear to have been living when the case was heard.

The bill of complaint alleges that the plaintiff is and for more than one year next preceding the institution of this suit has been a citizen and resident of Randolph County, West Virginia; that the plaintiff and the defendant were married at Duluth, Minnesota, on June 28, 1946; that the defendant is a resident of Randolph County; and that the plaintiff and the defendant last lived together and cohabited in Elkins, Randolph County, West Virginia. The acts and the conduct of the defendant relied on as constituting cruel or inhuman treatment by her of the plaintiff, as charged in the bill of complaint, are that the defendant, a woman of high temper and mean and irritable disposition, has on numerous occasions struck the plaintiff and thrown dishes and various other articles at him; that she has threatened to do him bodily harm and to kill him; that on several occasions she has "locked the Plaintiff out of the home" and sent his clothes to the home of his mother; that she has refused to cook for him and care for the home; that she is extravagant and has incurred excessive bills against the plaintiff; and that she has associated with immoral persons against the wishes of the plaintiff. The bill of complaint also alleges that in January, 1952, the defendant, without the knowledge or consent of the plaintiff, took their two children and certain articles of personal property and left "in the middle of the night" during the absence of the plaintiff; that her whereabouts is unknown to him; that he "has been very much upset" by the absence of his wife and children whose "where-

abouts" is unknown to him; and that "as a result of all these acts of cruelty * * * he does not believe he can any longer safely live with Defendant without jeopardizing his health and safety." The prayer is that the plaintiff be granted a divorce, that the custody of their children be awarded to him, and that he be granted both general and special relief.

The summons in this suit, directed to the sheriff of Randolph County, West Virginia, issued April 1, 1952, and returnable to the first Monday in April, 1952, which was April 7, 1952, was not served upon the defendant in this State. Instead it was served upon her in person at Duluth, Saint Louis County, Minnesota, on April 5, 1952. No order of publication against the defendant was sought or awarded.

The defendant did not interpose a demurrer or file an answer to the bill of complaint. She did, however, on April 8, 1952, tender a pleading designated as a plea in abatement in which she alleged that the defendant appeared specially by counsel for the purpose of contesting the jurisdiction of the court insofar as this suit relates to the custody of her children and for no other purpose; that before and at the commencement of this suit she and her two children were and still are residing in Saint Louis County, in the State of Minnesota, and not in Randolph County, or in the State of West Virginia; that before and at the time of the commencement of this suit there was and still is pending in the District Court of Saint Louis County, Minnesota, a suit instituted by the defendant for the custody of the children; that the children are residents of that county and State; and that the District Court has jurisdiction to try and determine all issues relating to the custody of the children. This plea, which contains no allegation concerning service of process upon the defendant in the State of Minnesota, or the return of such service, was filed by a decree entered in vacation on April 8, 1952, in which it is recited that the defendant appeared specially by her attorney for the

purpose of filing her plea in abatement to the jurisdiction of the court and that the defendant appeared specially "for no other reason."

Another decree, entered April 28, 1952, in vacation recites the appearance of the plaintiff and his counsel, the special appearance of the defendant by her counsel, and the filing of a notice by the plaintiff that he would move at that time for temporary custody of the children. The decree also contains these statements: "Thereupon the Defendant, by her attorney who appeared specially, moved that the matter be held in abeyance pending a decision by the Court on the Plea in Abatement heretofore filed in this cause. Thereupon the Court does take this matter under advisement and does continue this cause until the May term of Court on a date to be fixed for a hearing on the notice for custody of the children and the Plea in Abatement."

On May 29, 1952, a day of the May Term of the circuit court, the defendant tendered another plea, also designated as a plea in abatement, which alleges that the defendant appeared specially by counsel for the purpose of filing additional objections to the jurisdiction of the circuit court, and for that purpose only, and challenges the validity of the summons and the return of service on the grounds that personal service of process outside of this State could be had only upon a nonresident of this State, that the defendant at the time of such service was a resident, and not a nonresident, of this State, that the return of service is not sufficient because it does not show that the defendant is a nonresident of West Virginia, and that the foregoing service of process upon the defendant outside this State and the return of service do not satisfy the requirements of Section 25, Article 3, Chapter 56, Code, 1931, which provides in part that personal service of a summons may be made on a nonresident defendant outside of this State and that such service shall have the same, but no other, effect as an order of publication duly published against such defend-

ant. The plea also alleges that, as the issuance and the service of process in this suit were not legal or proper, the circuit court was without jurisdiction to grant a divorce or to decide any matters relating to a divorce or the custody of the children of the parties to this suit. The foregoing plea was filed by a decree of the circuit court entered on May 29, 1952, and the decree contains the recital that the defendant, appearing specially by her attorney for the purpose of filing her plea in abatement assigning additional grounds of objection to the jurisdiction of the court, presented her plea in abatement to the jurisdiction of the court.

The circuit court did not pass upon the legal sufficiency of either plea filed by the defendant until the entry of the final decree on December 5, 1952. By that decree the court held both pleas to be insufficient, granted the plaintiff a divorce, and awarded him the custody of the children subject to the right of the defendant to visit them during July and August in each year and to have them for one week at Christmas in alternate years beginning in December, 1953.

The evidence offered by the plaintiff which consisted of the testimony of the plaintiff and two witnesses produced in his behalf, was heard by the court on October 20, 1952. Concerning the acts of cruelty charged to the defendant the plaintiff testified, without specifying any dates, that on several occasions the defendant "locked" the plaintiff out of their home without justification; that in one instance she "locked" him out of the house for three days during which period he slept in the basement with the dog and that it was necessary for him to break the door to enter his home; that on several occasions she sent his clothes to the home of his mother who in each instance returned them to the home of the plaintiff; that at different times the defendant threw articles such as ash trays and glasses at the defendant; that she "tried to fight" with him and tried to use physical violence, but that he had restrained her; that she threatened several

times to cause him bodily harm; that on one occasion she threatened "to use a gun" to kill the plaintiff and that he was "forced" to hide the gun because she had threatened him; that she was extravagant and incurred excessive bills against the plaintiff in amounts of $400 or $500 for groceries, $150 or $200 for clothing, and $40 or $50 for shoes; that she refused to cook for the plaintiff; and that against the wishes of the plaintiff the defendant associated with a woman who, the plaintiff understood, was an alcoholic, and who, as he had been told, associated with "a few rather low characters around town" and whose reputation was "supposedly not so good". The plaintiff also testified that the defendant was high tempered and irritable; that she was "almost impossible to live with"; that because of her conduct the plaintiff had been "upset very much" and his health had been affected; that he had been unable to do his work properly due to his worry about the defendant and the children during their absence from his home; and that he did not believe that the defendant was a proper person to have the custody of the children because she was influenced by her mother and other persons and because he thought she was not "capable of judging for herself".

One of the witnesses produced by the plaintiff, a woman who had been employed to perform household services in the home of the plaintiff and the defendant before their separation, testified that the defendant was a woman of high temper and irritable disposition; and that the defendant had "locked" the plaintiff out of the house and had sent his clothes to the home of his mother. As to her knowledge of acts or threats of violence by the defendant toward the plaintiff this witness was asked these questions and gave these answers: "Q. Did you ever see her try to do anything towards her husband, throw anything at him, or threaten him any harm? A. I didn't see it, but I've seen the after effects of it, and she would laugh and tell me 'an accident.' Q. She would tell you about doing it after it happened? A. Yes. * * *. Q. Mr. Smith spoke about a gun he had to hide. Did you

ever hear her make any statements she was going to do anything to him, use the gun on him? A. I heard the statement. Q. You say you heard her make such a statement? A. I did." The other witness produced by the plaintiff, his mother, testified that on one occasion the defendant had sent clothes belonging to the plaintiff to the home of the witness by the driver of a taxicab; that the witness refused to permit the driver of the taxicab to leave the clothes at her home and requested him to take them back to the home of the plaintiff; that the driver did so; that the clothes were placed on the porch of the home of the plaintiff where they were exposed to rain and became wet; and that they were then put in the basement of his home and remained there for several weeks. She also testified that the act of the defendant in leaving with the children "upset" the plaintiff; and that he was not able to eat or sleep or work because he did not know where the defendant "had taken the children."

By her assignments of error the defendant seeks reversal of the final decree of the circuit court on substantially these grounds: (1) The service of process upon the defendant outside this State and the return of service were fatally defective and for that reason the circuit court was without jurisdiction to grant the plaintiff a divorce or to award him the custody of the children while they resided outside the State of West Virginia; and (2) the final decree, granting the plaintiff a divorce and awarding him the custody of the children, is without competent evidence to support it.

Section 25, Article 3, Chapter 56, Code, 1931, relating generally to service of a defendant by order of publication provides in part that personal service of a summons, scire facias or notice may be made on a nonresident defendant out of this State; that such service shall have the same effect, and no other, as an order of publication, duly published against such defendant; and that the return of service shall be made under oath, shall show the time and the place of such service, and that the defend-

ant so served is a nonresident of this State. Section 10, Article 2, Chapter 48, Code, 1931, a section first incorporated by that code in the statutes dealing with a suit to annul or affirm a marriage, or for divorce, provides that a decree may be entered in such suit upon an order of publication or upon personal service outside the State with the effect of publication as in other suits in chancery. These two sections should be read together and it is evident that when Section 10 is read with Section 25, Section 10 means that personal service may be made outside this State on a nonresident and that such service shall have the same effect as an order of publication duly published as in other suits in equity. That it was the intention of the Legislature to make that section applicable only to the personal service of a nonresident outside this State is clearly indicated by this statement in the Revisers' Note: "Thus in a divorce case against a nonresident defendant the procedure is just the same as in any other chancery case against a nonresident."

Section 9, Article 2, Chapter 48, Code, 1931, dealing with the venue of a suit to annul or affirm a marriage or for divorce, provides that a suit for divorce shall, if the defendant be a resident of this State, be brought in the county in which the parties last cohabited, or, at the option of the plaintiff, in the county in which the defendant resides, and that, if the defendant is not a resident of this State, such suit shall be brought in the county in which the plaintiff resides. As the bill of complaint alleges and the proof offered in behalf of the plaintiff shows that the plaintiff resides and has resided for more than one year next preceding the institution of this suit in Randolph County, and that the plaintiff and the defendant last cohabited in that county, the Circuit Court of Randolph County had jurisdiction of the subject matter of the suit. Without service of process upon the defendant personally in this State, or her voluntary appearance to the suit, or, if she is a nonresident, without publication or by personal service upon her outside this State, the circuit court could not acquire jurisdiction to

try or determine the case or to enter any binding decree against her. The defendant was not served with process in this State and she was not proceeded against as a nonresident by an order of publication. Her status as a resident or a nonresident of this State was not definitely established by the evidence. Neither the allegation in the bill of complaint that she is a resident, nor the averment in her pleas in abatement that she is a nonresident, is sufficient to establish the character of her residence. In a suit for divorce, under Section 11, Article 2, Chapter 48, Code, 1931, the bill of complaint shall not be taken for confessed; and, whether or not the defendant answers, the case must be tried and heard independently of the admissions of either party in the pleadings or otherwise; and no decree shall be granted on the uncorroborated testimony of the parties or either of them. In a suit for divorce admissions of a party, in the pleadings or in the evidence, relating to the question of the residence of either party, except to the extent that they tend to deny jurisdiction or to defeat the divorce, are inadmissible and can not be considered in determining the jurisdiction of the trial court. *Taylor* v. *Taylor*, 128 W. Va. 198, 36 S. E. 2d 601; *Marcum* v. *Marcum*, 113 W. Va. 374, 168 S. E. 389; *Trough* v. *Trough*, 59 W. Va. 464, 53 S. E. 630, 115 Am. St. Rep. 940, 4 L. R. A., N. S., 1185, 8 Ann. Cas. 837. Admissions by either party in such suit are, however, competent as evidence to defeat the divorce. *Tillis* v. *Tillis*, 55 W. Va. 198, 46 S. E. 926.

The verified return of personal service of the process upon the defendant in Saint Louis County, Minnesota, does not show that the defendant is a nonresident of this State. A showing of that fact by the return is required by Section 25, Article 3, Chapter 56, Code, 1931, and its omission from the return rendered the personal service of the process upon the defendant defective; and upon such process bearing such defective return the circuit court did not have jurisdiction to try and determine this suit or to enter in it any binding decree against the defendant. When, however, by her duly authorized attor-

ney, she filed her first plea in abatement and took subsequent action in connection with a continuance in the case the situation was substantially altered. In that plea in abatement, filed April 8, 1952, the defendant says that she appears specially by her attorney "for the purpose of contesting the jurisdiction of the court insofar as said suit relates to the custody of the children named therein, and for no other purpose, * * *." By this language she does not deny or question the jurisdiction of the court on any valid ground, such as lack of jurisdiction of the subject matter or lack of jurisdiction of the defendant because of defective process or defects in the return of service of such process. By her failure, in that plea in abatement, to challenge the jurisdiction of the court to entertain the suit she admits, in effect, the jurisdiction of the court to try and determine the suit for every purpose other than to determine the question of the custody of the children who were then residing in a foreign jurisdiction. A plea in abatement filed in a suit for divorce which states that the defendant appears specially and challenges the jurisdiction of the court only to the limited extent that the court is without jurisdiction to determine in such suit the single issue of the custody of the children of the parties does not challenge, but in effect admits, the jurisdiction of the court to entertain the suit and to adjudicate the other issues involved in such suit, and the defendant, by filing such plea in abatement, makes a general appearance in the case.

In *Stone* v. *Rudolph,* 127 W. Va. 335, 32 S. E. 2d 742, this Court held in point 1 of the syllabus that: "An appearance in a suit or action for any purpose other than to question the jurisdiction of the court, or to set up lack of process, or defective service thereof, is a general appearance." In *Mahany* v. *Kephart,* 15 W. Va. 609, point 2 of the syllabus is in this language: "By appearance to the action in any case, for any other purpose than to take advantage of the defective execution, or nonexecution, of process a defendant places himself precisely in the situation in which he would be, if process were

executed upon him, and he thereby waives all objection to the defective execution or non-execution of process upon him." See also *Frank* v. *Zeigler*, 46 W. Va. 614, 33 S. E. 761; *The Bank of the Valley* v. *The Bank of Berkeley*, 3 W. Va. 386. As to the necessity of appearing for the sole purpose of attacking the jurisdiction of the court the text in 3 Am. Jur., Appearances, Section 11, supported by many decisions, is in these words: "Generally it may be said that a defendant who intends to rely on a want of jurisdiction over his person must appear, if at all, for the sole purpose of objecting to the jurisdiction of the court. An appearance, in the first instance, for any other purpose, is usually considered general, and gives the same jurisdiction over the person of the defendant as though process had been regularly served in the manner and form, and for the length of time, prescribed by law." In the *Stone* case, discussing the question of the sufficiency of the service of process on Rudolph, one of the defendants, and the character of the appearance made by him in the case, this Court said: "The question was raised, through a special appearance, by motion to quash the return of service, which motion was overruled, and the service held effective. The orders bearing on this point show that on April 26, 1943, Vernon Rudolph, by his attorney, appeared specially and for no other purpose than to renew a motion made at the January term, 1943, to quash the service of process and return thereof as to him, and that the court refused to quash the service and return, to which Rudolph excepted. The order entered on that day then shows that Rudolph 'appeared generally and tendered and asked leave to file an affidavit purporting to show that he is in the military service of the United States.' However, at a later date, and at the same term, this order was amended by striking out the word 'generally' and substituting the word 'specially'. We do not think that we are called upon to decide the question whether there was, in the first instance, a valid service of process on Rudolph, because we consider that the subsequent acts of Rudolph and

his counsel constituted general appearance. The order entered on April 26, 1943, shows that he appeared generally in the action by pleading the general issue therein, and we do not think the subsequent order which amended that order and substituted the word 'specially' for the word 'generally' had any effect to change the character of the appearances that were made. It is well settled and no authority is needed for the proposition, that an appearance in a suit or action for any purpose other than one to test the jurisdiction of the court, or the sufficiency and service of a process, is a general appearance."

Appearances may be either general or special. The distinction between them is determined not so much by the manner in which an appearance is made, but by the purpose and the effect of the appearance. If an appearance is in effect general its designation as a special appearance will not change its real character. *Re Blalock,* 233 N. C. 493, 64 S. E. 2d 845, 25 A. L. R. 2d 818; 3 Am. Jur., Appearances, Section 12.

In addition to the action of the defendant in filing her first plea in abatement which, as indicated, constituted a general appearance, the defendant also made a general appearance in the case on April 28, 1952, when the court, in vacation, was called upon to consider a motion by the plaintiff for temporary custody of the children. At that time, according to the decree, the defendant, by her attorney, making an appearance designated as a special appearance, moved the court that the motion of the plaintiff for temporary custody of the children "be held in abeyance pending a decision by the Court on the Plea in Abatement heretofore filed in this cause." The court then took that matter under advisement and continued the case until the May term of Court and to a day to be fixed for a hearing on the motion for custody of the children and on the plea in abatement. This action by the defendant was in effect a motion for a continuance in the case which was granted by the court.

It is well settled that a motion for continuance con-

stitutes a general appearance in an action or a suit. *Bennett* v. *Bennett*, 137 W. Va. 179, 70 S. E. 2d 894; *State* v. *Thacker Coal and Coke Company*, 49 W. Va. 140, 38 S. E. 539; *Layne* v. *The Ohio River Railroad Company*, 35 W. Va. 438, 14 S. E. 123; *Mahany* v. *Kephart*, 15 W. Va. 609; *The Bank of the Valley* v. *The Bank of Berkeley*, 3 W. Va. 386. A general appearance by a defendant waives all defects in the process and in the service of process on the general theory that the office of process is to bring a defendant into court and give him notice of the proceeding. *Stone* v. *Rudolph*, 127 W. Va. 335, 32 S. E. 2d 742; *State* v. *Thacker Coal and Coke Company*, 49 W. Va. 140, 38 S. E. 539; *The Chilhowie Lumber Company* v. *J. C. and W. B. Lance and Company*, 50 W. Va. 636, 41 S. E. 128; *Mahany* v. *Kephart*, 15 W. Va. 609; *Harvey* v. *Skipwith*, 16 Gratt., 410. In the *Harvey* case the opinion contains this language: "It is a well established rule that by appearing and pleading to the action the defendant waives all defects in the process and in the service thereof. The cases go further and imply such a waiver from the defendants taking or consenting to a continuance, as fully as they do from his pleading to the action. The object of the writ is to apprise the defendant of the nature of the proceeding against him. The fact of his taking or agreeing to a continuance is evidence of his having made himself a party to the record, and, of his having recognized the case as in court. It is too late for him afterwards to say that he has not been regularly brought into court."

By reason of the general appearances of the defendant, which render ineffective any defect in the process or its service upon her in Saint Louis County, Minnesota, the circuit court acquired jurisdiction of the person of the defendant and had full jurisdiction to try and determine the case and to enter a personal decree against her. It is generally recognized that a voluntary appearance by a defendant is equivalent to personal service of a summons upon such defendant. See *Schillerstrom* v. *Schillerstrom*, 75 N. D. 667, 32 N. W. 2d 106, 2 A. L. R. 2d 271.

Though the defendant, after making her general appearances as indicated, filed a second plea in abatement in which she challenges the jurisdiction of the circuit court because of the defective service of process, that plea was of no effect because of her prior general appearances. By filing the second plea in abatement the defendant could not withdraw or remove her prior general appearances and, having appeared generally and by so doing waived any defects in the process and its service, she could not then question the sufficiency of the process or the return of service by such pleading or in that manner avoid the effect of her former general appearances.

The evidence produced by the plaintiff, however, does not establish cruel or inhuman treatment upon the part of the defendant, and does not entitle the plaintiff to a divorce. The only acts or misconduct upon the part of the defendant testified to by the plaintiff which are in any wise corroborated by the testimony of any witness are the acts of the defendant in "locking" the plaintiff out of his home, in sending his clothes to the home of his mother, and in leaving her home at night with the children and concealing her and their whereabouts from him in a manner which caused him worry and anxiety and which affected his peace of mind and his ability to work. None of these acts, singly or together, constitutes cruel or inhuman treatment. See *Davis* v. *Davis,* 137 W. Va. 213, 70 S. E. 2d 889; *Harbert* v. *Harbert,* 130 W. Va. 704, 45 S. E. 2d 15; *Cochran* v. *Cochran,* 130 W. Va. 605, 44 S. E. 2d 828; *Schutte* v. *Schutte,* 90 W. Va. 787, 111 S. E. 840; *Roush* v. *Roush,* 90 W. Va. 491, 111 S. E. 334. In a suit for divorce, based on cruel or inhuman treatment, the true issue and test is whether under all the facts proved, the plaintiff can with safety to person and health continue to live with the defendant. *Roush* v. *Roush,* 90 W. Va. 491, 111 S. E. 334; *Maxwell* v. *Maxwell,* 69 W. Va. 414, 71 S. E. 571. There is no testimony that the conduct of the defendant has impaired the health of the plaintiff and the only testimony which

indicates that the plaintiff can not with safety to his person continue to live with the defendant is his uncorroborated statement to that effect. "To justify a divorce on the ground of cruel and inhuman treatment generally requires evidence of personal violence or other acts tending to break down the health and happiness of the offended spouse." *Schutte* v. *Schutte,* 90 W. Va. 787, 111 S. E. 840; *Cochran* v. *Cochran,* 130 W. Va. 605, 44 S. E. 2d 828. The threats by the defendant to kill the plaintiff, which caused him to hide the gun, and her acts in throwing articles at him, in "trying to fight with" him, and in threatening him with violence, which he says he restrained, testified to by the plaintiff, are not corroborated by any competent evidence. Though one witness produced in his behalf testified in effect that the defendant told her that she had made such threats, the witness admitted that she was not present at the time and her testimony on that subject was merely testimony of admissions made to her by the defendant. The testimony of the witness on that point stands no higher than testimony to that effect if given by the defendant herself which, as an admission of a party in a suit for divorce, by virtue of the statute, is not sufficient to sustain a decree which grants a divorce. Section 11, Article 2, Chapter 48, Code, 1931; *Persinger* v. *Persinger,* 133 W. Va. 312, 56 S. E. 2d 110. The final decree to the extent that it grants the plaintiff a divorce from the defendant is not supported by the evidence and, for that reason, that part of the decree is erroneous and should be reversed. "A divorce decree that lacks evidence to establish the ground upon which divorce was sought will be reversed." Point 1, syllabus, *Harbert* v. *Harbert,* 130 W. Va. 704, 45 S. E. 2d 15. A decree of a trial chancellor on an issue of fact will be reversed when it is not supported by the evidence. *Central Trust Company* v. *Cook,* 111 W. Va. 99, 160 S. E. 561. If the findings of fact of a trial chancellor are clearly wrong or against the preponderance of the whole evidence such findings will be reversed. *Tokas* v. *J. J. Arnold Company,* 122 W. Va. 613, 11 S. E. 2d 759; *Bus-*

*kirk* v. *Bankers Finance Corporation,* 121 W. Va. 361, 3 S. E. 2d 450; *Pickens* v. *O'Hara,* 120 W. Va. 751, 200 S. E. 746; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537; *Gall* v. *Cowell,* 118 W. Va. 263, 190 S. E. 130; *Smith* v. *Pew,* 116 W. Va. 734, 183 S. E. 53; *Wood* v. *Snodgrass,* 116 W. Va. 538, 182 S. E. 286.

Section 13, Article 2, Chapter 48, Code, 1931, provides in part that a court having jurisdiction of a suit for divorce may, at any time after commencement of the suit and after reasonable notice, make any order to provide for the custody of the minor children of the parties during the pendency of the suit. Section 15, Article 2, Chapter 48, Code, 1931, as amended, provides in part that upon decreeing a divorce the court may make such further decree as it shall deem expedient concerning the care, custody, education and maintenance of the minor children, and may determine with which of the parents the children, or any of them, may remain. The same section also provides that in any case in which a divorce is denied, if the parties are living separate and apart from each other, the court shall retain jurisdiction of the case for the purpose of determining with which of the parents the children, or any of them, may remain and of making such order or decree concerning the care, custody, education and maintenance of the minor children, or any of them, as to the court may seem proper and the benefit of the child or children may require.

Under the provisions of Section 15, Article 2, Chapter 48, Code, 1931, as amended, a court having jurisdiction of the subject matter of a suit for divorce and jurisdiction of the person of the parties may, in the exercise of its discretion, determine the custody of the minor children of the marriage and, if a divorce is decreed, or if a divorce is denied and the parties are living separate and apart, may award the custody of such children to either party; and the matter of the custody of such children remains in the discretion of the court by virtue of its continuing jurisdiction of the case. *Settle* v. *Settle,* 117 W.

Va. 476, 185 S. E. 859. When a court has jurisdiction of the subject matter of a suit for divorce and jurisdiction of the person of the parties, one of whom has the custody of the minor children of the marriage, it is not deprived of its power to award the custody of such children to either party by reason of the absence of such children from its jurisdiction at the time of the institution of the suit or the entry of the decree. *Anderson* v. *Anderson,* 74 W. Va. 124, 81 S. E. 706; *Stephens* v. *Stephens,* 53 Idaho 427, 24 P. 2d 52. In the *Anderson* case this Court said: "That the children may not have been within the jurisdiction of the court at the time of the institution of the suit or entry of the decree is immaterial, since the parties litigant were the father and mother and the cause of action, the right of custody, insofar as it affected the children, was between them, and the court had full jurisdiction over them with power to render a personal decree."

The uncontradicted testimony of the plaintiff is to the effect that he and the defendant are living separate and apart; that his children were, during the pendency of this suit, outside this State; that the defendant is high tempered and irritable; that she is extravagant; that she associated with a woman who took the little girl to a beer parlor; that the little boy was under treatment by a doctor when the defendant took him from the home of the plaintiff and out of this State; and that, in his opinion, the defendant is not a proper person to have the custody of the children. A part of that testimony is not corroborated and all of it, even if corroborated, is not sufficient to support a decree of divorce based on cruel or inhuman treatment. It is admissable, however, upon the separate issue of the custody of the children. The provision of Section 11, Article 2, Chapter 48, Code, 1931, that no decree shall be granted on the uncorroborated testimony of the parties or either of them, does not apply to the testimony of a party to a suit for divorce upon the issue of the custody of the children of the marriage and, as to

that issue, the testimony of a party, whether or not corroborated, if otherwise sufficient, will sustain an award of the custody of such children in such suit. The testimony of the plaintiff which, upon the issue of the custody of the children need not be corroborated, and which is not denied by any pleading or controverted by any evidence of the defendant, is sufficient to show that the welfare of the children will be benefited or promoted by awarding them to him and such testimony sustains the decree of the circuit court to the extent that it gives the custody of the children to him subject to the right of the defendant to visit them in July and August of each year and to have them for one week at Christmas in each alternative year.

In a proceeding involving the custody of minor children the welfare of the children is of paramount and controlling importance and is the polar star by which the discretion of the court must be guided. *Pugh* v. *Pugh*, 133 W. Va. 501, 56 S. E. 2d 901, 15 A. L. R. 2d 424; *State ex rel. Lipscomb* v. *Joplin*, 131 W. Va. 302, 47 S. E. 2d 221; *Pukas* v. *Pukas*, 129 W. Va. 765, 42 S. E. 2d 11; *Harloe* v. *Harloe*, 129 W. Va. 1, 38 S. E. 2d 362; *Suter* v. *Suter*, 128 W. Va. 511, 37 S. E. 2d 474; *Frame* v. *Wehn*, 120 W. Va. 208, 197 S. E. 524; *Settle* v. *Settle*, 117 W. Va. 476, 185 S. E. 859; *Suder* v. *Suder*, 112 W. Va. 664, 166 S. E. 385; *Arnold* v. *Arnold*, 112 W. Va. 481, 164 S. E. 850; *Walker* v. *Walker*, 109 W. Va. 662, 155 S. E. 903; *Reynolds* v. *Reynolds*, 109 W. Va. 513, 155 S. E. 652; *State ex rel. Cooke* v. *Williams*, 107 W. Va. 450, 148 S. E. 488; *Rierson* v. *Rierson*, 107 W. Va. 321, 148 S. E. 203; *State ex rel. Palmer* v. *Postlethwaite*, 106 W. Va. 383, 145 S. E. 738; *Connor* v. *Harris*, 100 W. Va. 313, 130 S. E. 281; *Post* v. *Post*, 95 W. Va. 155, 120 S. E. 385; *Boos* v. *Boos*, 93 W. Va. 727, 117 S. E. 616; *Gates* v. *Gates*, 87 W. Va. 603, 105 S. E. 815; *Dawson* v. *Dawson*, 57 W. Va. 520, 50 S. E. 613, 110 Am. St. Rep. 800; *Cunningham* v. *Barnes*, 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57. Under the statute, designated as Section 11, Chapter 64,

in the earlier codes of this State and, as modified, now contained in Section 15, Article 2, Chapter 48, Code, 1931, as amended, the trial court in a suit for divorce is vested with a sound discretion to determine the custody of the minor children of the parties to such suit. *White* v. *White,* 106 W. Va. 680, 146 S. E. 720; *Gates* v. *Gates,* 87 W. Va. 603, 105 S. E. 815; *Buseman* v. *Buseman,* 83 W. Va. 496, 98 S. E. 574; *Dawson* v. *Dawson,* 57 W. Va. 520, 50 S. E. 613, 110 Am. St. Rep. 800. The exercise of discretion by the trial court in awarding the custody of minor children will not be disturbed on appeal unless it clearly appears that such discretion has been abused. *Pukas v. Pukas,* 129 W. Va. 765, 42 S. E. 2d 11; *Frame* v. *Wehn,* 120 W. Va. 208, 197 S. E. 524; *Walker v. Walker,* 109 W. Va. 662, 155 S. E. 903; *Norman v. Norman,* 88 W. Va. 640, 107 S. E. 407; *Gates v. Gates,* 87 W. Va. 603, 105 S. E. 815. Under the evidence offered by the plaintiff, and in the absence of any evidence to the contrary by the defendant, it can not be said that the action of the circuit court in awarding the custody of the children to the plaintiff, as provided in the final decree, constituted an abuse of its discretion; and the decree, to the extent that it provides for the custody of the children, should be affirmed.

For the reasons stated, the final decree of the Circuit Court of Randolph County, to the extent that it grants a divorce to the plaintiff, is reversed, and, to the extent that it awards the custody of the children to the plaintiff, the decree is affirmed.

*Reversed in part and
affirmed in part.*