## Shultz *v.* Keystone Fireworks Manufacturing Company, Inc., Appellant.

Argued November 11, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Henry R. Beeson,* with him *Higbee, Lewellyn & Beeson,* for appellant.

*David E. Cohen,* with him *Joseph W. Ray, Jr.,* and *Ray, Coldren & Buck,* for appellee.

OPINION BY ERVIN, J., January 21, 1958:

The judgment of the court below should be affirmed on the excellent opinion of President Judge CARR, which is as follows: "This is a motion for judgment on the pleadings. The action is assumpsit on a judgment in personam of a sister state, and the question involved is whether, though the defendant was not properly served and did not appear before the judgment was entered, a subsequent appearance by counsel for the purpose of moving the court to vacate the judgment constituted a waiver of the want of jurisdiction.

"The complaint sets forth that on October 29, 1954, the plaintiff, J. Owen Shultz, recovered a judgment against the defendant, Keystone Fireworks Manufacturing Company, Inc., a Pennsylvania corporation, in the Circuit Court of Monongalia County, West Virginia, for the sum of $3,500.00, with interest and costs, which remains in full force, not having been annulled, reversed, or satisfied. Attached to the complaint and made a part of it is an exemplification of the record of the proceeding and judgment.

"It appears that the plaintiff owned a barn in Monongalia County, West Virginia, which on September 1, 1952, was set on fire and burned to the ground allegedly as the result of the negligence of the defend-

ant in the management of a ceremonial display of fireworks on adjoining premises. On April 21, 1954, the plaintiff commenced in the West Virginia court an action of trespass on the case, filed an affidavit that the defendant was a foreign corporation not qualified to do business in West Virginia and had no statutory attorney-in-fact, officer, director, or agent within the State of West Virginia upon whom service of process could be had, and thereupon obtained an order for service by publication, notice of which was advertised in The Morgantown Post, a daily newspaper published in Morgantown, Monongalia County, West Virginia, on April 23, April 30, and May 7, 1954, and posted at the front door of the Court House. The defendant did not appear in response to the published notice, either in person or by counsel, and on October 29, 1954, a jury having been called and sworn returned a verdict in favor of the plaintiff in the amount of $3,500.00 On the same day the court entered judgment on the verdict.

"Thereafter, on March 2, 1955, as the record is, the defendant by its attorney 'moved the court for leave to appear specially for the sole purpose of moving the court to vacate the order and judgment heretofore entered in this case on the 29th day of October, 1954, in the amount of three thousand, five hundred dollars ($3,500.00), and leave being granted, the Keystone Fireworks Manufacturing Company, Inc., by its attorney, appeared specially for the sole and only purpose aforesaid and moved the court to vacate said order and judgment, to which the plaintiff objected, and the court hereby sets the matter down for further hearing.' Finally, on March 30, 1955, having heard the arguments of counsel and considered its judgment, the court entered an order overruling the defendant's motion for leave to appear specially for the purpose aforesaid and refusing to vacate the judgment.

"In the action here, the defendant filed an answer admitting the facts alleged in the complaint and those set forth in the exemplified record attached to it, but averring that it had not engaged in business in West Virginia, that none of its officers, directors, or attorneys resided in that state, and that it had no notice or knowledge of the institution of the proceeding or the entry of judgment against it; and after the pleadings had been closed, it filed the motion now before us for judgment in its favor on the ground that the West Virginia court was without jurisdiction to give judgment against it. Although the record does not disclose the precise basis of the motion there made to vacate the judgment, counsel for the defendant have stated to us that the sole question raised was that of jurisdiction.

"It seems quite clear that on October 29, 1954, when the judgment sued on was entered, the West Virginia court did, indeed, lack jurisdiction: Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. But, as the plaintiff points out, the question remains whether the want of jurisdiction was not cured by the defendant's voluntary appearance on March 2, 1955, to move that the judgment be vacated. The plaintiff contends that since the motion to vacate the judgment was not expressly limited to the question of jurisdiction, it must be regarded as a general rather than a special appearance, and therefore constituted a submission of all questions that were or might have been raised, including that of jurisdiction, in consequence of which the judgment is now in all respects res judicata.

"In our opinion, however, the character of the appearance, whether general or special, is of no moment. Under the law of West Virginia, as under the common law, any appearance except to object to the jurisdiction is a general appearance, not special: Byrd v. Rector, 112 W. Va. 192, 163 S.E. 845; Smith v. Smith, 138

W. Va. 388, 76 S.E. (2d) 253. If, then, the appearance be regarded as general it was, of course, a full submission to the court without reservation, and if special, as it is designated in the motion and order, it was by definition a submission at least of the specific question of jurisdiction, giving point to the fact that the defendant entered the court for the very purpose of litigating the identical issue it here seeks to raise and try out anew. Thus, in either case, the defendant has had its day in court, and the judgment is now res judicata, even though erroneous; an erroneous determination would, in these circumstances, be ground for reversal in an appellate court, but cannot be attacked collaterally: Baldwin v. Iowa State Traveling Men's Association, 283 U. S. 522, 75 L. Ed. 1244, 51 S. Ct. 517; Chamblin v. Chamblin, 362 Ill. 588, 1 N.E. (2d) 73, certiorari denied 299 U. S. 541, 81 L. Ed. 398, 57 S. Ct. 24; Restatement, Judgments, sec. 9. The defendant could have elected not to appear at all, and if it had adopted that course the judgment would still be open to attack in any other jurisdiction in which the plaintiff might attempt to enforce it, but, having elected to appear to obtain a judicial determination for its benefit, cannot impugn the authority of the court to make it. As was said by the Supreme Court in the Baldwin case, 'Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of that contest, and that matters once tried shall be forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.'

"We conclude that under Subdivision (b) of Rule 1034 of the Pennsylvania Rules of Civil Procedure

judgment should be entered for the plaintiff, though the motion for judgment was made by the defendant: Boron v. Smith, 380 Pa. 98."

In the argument before us the appellant contends that the West Virginia court could not infuse life into a void judgment.

In support of its contention, the appellant cites as authority an excerpt taken out of context from Joseph H. Beale, A Treatise on the Conflict of Laws, Vol. 1, §82.4, page 351, as follows: "The better view is that though he [the defendant] does thereby confer jurisdiction upon the court, the effect of his appearance will not be retroactive so as to validate the judgment previously rendered, but will merely give the court jurisdiction to render a judgment thereafter."

The entire paragraph in the above cited authority. reads as follows: "General Appearance after Judgments.—In some states it is held that if a judgment by default is rendered against a defendant over whom the court has no jurisdiction, and he thereafter appears for the purpose of having the judgment set aside or reversed upon some ground other than lack of jurisdiction, the court thereby acquires jurisdiction over him, so that the judgment cannot be set aside for lack of jurisdiction. The better view is that though he does confer jurisdiction upon the court, the effect of his appearance will not be retroactive so as to validate the judgment previously rendered, but will merely give the court jurisdiction to render a judgment thereafter."

A cursory reading of the above paragraph discloses that it is inapposite and not germane to the issue in the case at bar. Professor Beale was obviously discussing the effect to be given to a general appearance after judgment by the court of the forum. He was not discussing the problem with which we are concerned here, namely, whether the determination of a foreign

court that it had jurisdiction, either correctly or erroneously, is res judicata of a jurisdictional fact in an action of assumpsit in a court of a sister state based on the in personam judgment of the foreign court. However, Professor Beale, in the same Treatise, does discuss the issue presented in this case in §450.9 at page 1424, as follows: "Res Judicata of Jurisdictional Fact. —The judgment of a sister state is presumed to be valid; and if no defect of jurisdiction appears on the record it will be taken as valid in the absence of evidence to the contrary. But evidence will always be admitted to disprove a jurisdictional fact, that is, a fact upon which the judgment of the foreign court was based. Such a fact commonly put in issue is that of domicil.

"Nevertheless, if the jurisdictional fact was litigated by the defendant in the foreign action and found against the defendant, the question of jurisdiction becomes res judicata, and cannot be litigated; even if in the foreign action it was put in issue by a special appearance to deny jurisdiction, and was litigated upon that."[1]

Appellant further contends that in all the cases cited to the court below there was some notice to the defendant before hearing and judgment or the defendant appeared in court before judgment was rendered and contested the jurisdiction, and that in no instance

---

[1] Cases cited by Professor Beale in support of the above text are: *Sipe v. Copwell*, 59 F. 970; *Blakeslee v. Blakeslee*, 213 Ill. App. 168; *Hall v. Wilder Mfg. Co.*, 316 Mo. 812, 293 S.W. 760, 52 A.L.R. 723; *John Simmons Co. v. Sloan*, 104 N. J. 612, 142 A. 15; *Tatum v. Maloney*, 226 A. D. 62, 234 N. Y. S. 614; *Guerin Mills v. Barrett*, 134 Misc. 256, 234 N. Y. S. 326. Other cases which support this position are: *American Surety Co. v. Baldwin*, 287 U. S. 156, 77 L. Ed. 231; *Chicago Life Insurance Co. v. Cherry*, 244 U. S. 25, 61 L. Ed. 966; *Wright v. Douglass*, 10 Barb. 97, at page 111; *O'Donoghue v. Boies*, 159 N. Y. 87, at page 99, 53 N.E. 537, 540; *Guggenheim v. Wahl*, 203 N. Y. 390, 96 N.E. 726.

was judgment rendered without some knowledge, notice or service on the defendant or some action on the part of the defendant. In the case of *John Simmons Co. v. Sloan,* 104 N. J. L. 612, 142 A. 15, the defendant appeared specially *after* judgment was entered against him to contest the jurisdiction of the court which had entered judgment. Subsequently, in an action in New Jersey based on the judgment of the sister state, the New Jersey court held the matter of jurisdiction to be res judicata.

The appellant was not denied due process of law. It had the right to appeal from the order of the West Virginia court. Instead, it elected to withdraw from any further proceedings there and now attempts to have a Pennsylvania court try an issue already decided adversely to it by a court of a sister state.

Judgment affirmed.